UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

INSURANCE RECOVERY GROUP, INC.,

Plaintiff,

v.

JOHN CONNOLLY, NEIL SALTERS,
JONATHAN LADENHEIM, STEVEN
IERONIMO and ISG RECOVERIES LLC,

Defendants.

Civil Action No. 11-10935-WGY

## MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS
## AGAINST DEFENDANTS' ATTORNEYS

Insurance Recovery Group, Inc. ("IRG") files this memorandum in support of its

motion requesting sanctions against the White Plains, New York law firm of Meiselman,

Denlea, Packman, Carton & Eberz P.C. ("Meiselman"), Meiselman partner D. Greg

Blankinship ("Blankinship") and trial attorney Joshua S. Bauchner ("Bauchner" and

together with Meiselman and Blankinship, the "NY Attorneys") for their intentional

destruction of evidence, violations of the orders of this Court and related misconduct.[1]

## INTRODUCTION

The NY Attorneys counseled their clients, defendants in this action, to destroy

evidence. This is confirmed by NY Attorneys' statements, defendants' affidavits made in

accordance with Judge Gertner's temporary restraining order (the "TRO"), and testimony

elicited by IRG. The destruction of evidence served two purposes. First, it prevented IRG

from using those materials to demonstrate the defendants' ("Defendants") tortious actions

in the three-day trial before Judge Young, and the ensuing arbitration. Second, it

---

[1] Blankinship is a member of the Massachusetts bar. The Court granted Blankinship's motion to admit Bauchner *pro hac vice*. *See* ECF Dkt. No. 10.

prevented IRG from discovering additional details of the NY Attorneys' role in aiding and abetting defendants' tortious conduct and counseling defendants' to destroy evidence.

The NY Attorneys acknowledged their obligation to preserve evidence in a letter to Judge Wolf after the TRO entered.[2] Just days later, however, and after discovering that Defendants' competing ISG Recoveries emails were loaded onto the IRG laptops that Judge Gertner ordered Defendants to return, the NY Attorneys switched gears and advised their clients to "delete, shred or purge" anything that had to do with IRG. Their excuse? Judge Gertner's TRO required them to destroy the evidence.

The NY Attorneys also falsely represented to Judge Young that they had returned fully restored images of the laptop hard drives. In truth, the NY Attorneys caused the permanent destruction of *all* electronic documents from Salters and Connolly, and permanently destroyed all deleted data previously possessed by Ladenheim and Ieronimo. The NY Attorneys' instructions to "delete, shred or purge" everything was not limited to data on the Laptop, as they also counseled Defendants to destroy hard copy documents and documents in their personal emails. No effort was made to preserve those materials.

By their actions, the NY Attorneys: (i) violated the TRO; (ii) violated Judge Young's direct orders to produce fully restored images of the laptops; and (iii) intentionally destroyed evidence. The NY Attorneys also violated following ethical rules that accompany the privilege of practicing law in the Commonwealth:

- o Rule 3.3 - Candor Toward the Tribunal
- o Rule 3.4 - Fairness to Opposing Party and Counsel
- o Rule 4.1 - Truthfulness in Statements to Others
- o Rule 5.1 - Responsibilities of a Partner or Supervisory Lawyer

---

[2] Once litigation is reasonably anticipated, a party has a duty to preserve relevant evidence. *See Velez v. Marriot PR Mgmt., Inc.*, 590 F.Supp.2d 235, 258 (D. P.R. 2008). Relevant evidence is that which may prove or disprove a party's liability theory. *See id.*

o        Rule 8.4 - Misconduct[3]

IRG has been damaged as a result of the NY Attorneys' actions. With the most relevant evidence destroyed, IRG was forced to incur considerable fees to establish the facts readily apparent in the destroyed materials. The destruction of those materials also empowered Connolly and Salters to carry on the fiction that ISG Recoveries never existed and that they never competed with IRG. IRG also was forced to incur expert fees to determine the extent to which evidence was permanently destroyed from the Laptops and the Images.[4]

In further support of its motion, IRG respectfully states as follows.

## BACKGROUND

A.      The District Court's Temporary Restraining Order Instructed Defendant to Return the Laptops and Electronic Information to IRG

Defendants were IRG consultants. In the spring of 2011, the NY Attorneys counseled Salters and Connolly on how to raid IRG's subrogation business. As part of those discussions, James Denlea, a named partner at Meiselman, asked "how much do you want to 'repay'?" and "If you don't do what they want, do you think they really have the stomach/resources to chase you to N.Y. for a protracted litigation?" and "Can [Connolly's] investor fund whatever it would take for an immediate divorce from these guys plus startup costs?" *See* email at **Exhibit A**.

Emails sent to IRG's email server, including Denlea's emails and emails by which Defendants forwarded IRG Confidential Information to their personal and

---

[3] Pursuant to LR 83.6, such misconduct is grounds for discipline. *See* LR 83.6(4)(A),(B); *see also* LR Rule 83.6(5)(A) (discussing referral of matter for investigation).
[4] Additionally, although IRG obtained a $1,865,812.02 arbitration award against defendant Connolly, its prospects of collecting that award are uncertain. Moreover, defendant Salters filed for bankruptcy protection in January 2012. Nothing herein should be construed as requesting any form of relief against Salters, as such acts are stayed pursuant to 11 U.S.C. § 362.

isgrecoveries.com email accounts, demonstrated that Defendants were actively raiding IRG's subrogation business. Accordingly, on May 18, 2011, IRG filed suit in the Business Litigation Session of the Massachusetts Superior Court. Defendants removed this action to this Court on May 24, 2011.

On May 25, 2011, IRG filed an emergency motion requesting equitable and injunctive relief. By ECF order dated May 26, 2011, Judge Gertner granted IRG's request as a temporary restraining order, but did not sign the proposed order. The proposed order called for Defendants to return, among other things, all confidential information to IRG within twenty-four hours, including four company laptops (the "Laptops") issued to Defendants (the "TRO"). Copies of Judge Gertner's ECF order the proposed order are attached as **Exhibit B**.

The NY Attorneys understood Judge Gertner's order to require the return of electronic data and the Laptops to IRG. On May 26, 2012, approximately two hours after the TRO entered, Greg Blankinship wrote to IRG's counsel, stating:

> Joe, we would like to arrange for your client to collect its computers from our clients. Jon Ladenheim has one computer located at 27 Autumn Drive, Plainview, NY. Steve Ieronimo has one computer at 2728 Anthony Ave., Bellmore, NY, and Neil Salters has two computers at 43 Broadview Avenue, New Rochelle, NY.

*See* emails at **Exhibit C**. IRG's counsel instructed Blankinship to return the Laptops to IRG via Federal Express, but Blankinship refused. *Id.*

B.   Blankinship's Letter to Judge Wolf

By letter to Judge Wolf[5] dated Friday, May 27, 2011 and filed on ECF at 4:56 PM (Docket No. 7), Blankinship indicated he had concerns about the production of attorney-client communications contained on the Laptops. *See* Letter at **Exhibit D**. Based on those

---

[5] Although Judge Gertner issued the TRO, the case was initially assigned to Judge Wolf. On June 2, 2011, the case was reassigned to the Hon. William G. Young.

purported concerns, Blankinship represented that he would make and retain "a forensic copy" of the Laptops (the "Images") to preserve "attorney-client communications and materials otherwise germane to this matter" that were contained on the Laptops. **Ex. D**. Blankinship acknowledged that the "destruction [of materials on the Laptops] would be contrary [to] counsel's preservation obligations." **Ex. D**. Blankinship also represented that "[o]nce the emails in question [*i.e.*, the attorney-client communications] have been removed from IRG computers, we will make prompt arrangements for their return." **Ex. D**.

On June 2, 2011, Defendants returned the Laptops to IRG by FedEx. Upon forensic inspection, however, IRG discovered the Laptops had been purged of all data.[6] IRG, in turn, notified the Court of this development.

C.    The District Court Ordered Defendants to Turnover the Images

Trial of IRG's claims for equitable and injunctive relief began on June 9, 2011. On the first day of trial, the Court instructed Defendants to deliver the Images to IRG immediately, inclusive of any attorney-client communications. **Ex. E** (14:7-15:23; 127:1-2). On June 10, 2011, attorney Bauchner represented to the Court that data seemingly was missing from the Images but that an expert was seeking to address this issue. **Ex. F** (4:1-5:19). The District Court then instructed Defendants either to deliver the fully restored Images by Monday June 13, 2011 or produce a witness who could testify concerning the destruction of evidence. **Ex. F** (4:1-5:19; 153:20-155). The Court separately warned attorney Bauchner "if there has been spoliation that is a direct violation of this Court's order and I will know what to do" and "if there's been spoliation of evidence a sanction will follow. A severe sanction." *Id.*

---

[6] So thorough was Defendants' purging of information from the Laptops that IRG's computer experts at Elysium Digital, LLC ("Elysium") described it as having been accomplished at Department of Defense standards.

On June 13, 2011, Bauchner delivered a hard drive to IRG in open court and represented that the hard drive contained the fully restored Images of all four Laptops. **Ex. G** (3:24-4:2); Affidavit of Lawrence Delaney, attached as **Exhibit H**, ¶ 5. IRG delivered the hard drive to its computer experts at Elysium that same day. *See* **Ex. H**, ¶ 6.

D.     Defendants Produced Partial Images and Permanently Deleted Relevant Evidence
       From the Laptops

Elysium determined that Defendants' counsel's representations to the Court were untrue. First, the hard drive contained data from only **three** Laptops—not four as represented by counsel—*and no data or email accounts for Salters or Connolly.*[7] *See* **Ex. H**, ¶¶ 9, 12; Affidavit of Michael Perry, attached as **Exhibit I**. Second, significant data were omitted from the Images that were produced. **Ex. I**, ¶ 7. Instead of providing forensic images (i.e. bit-for-bit) copies of the Laptops as promised, Defendants delivered VHD (virtual hard disk) images that were "dynamically provisioned." *Id.* Unlike "fixed provisioned" VHD copies, dynamically provisioned copies do not contain unallocated space and thus do not provide an exact copy of the Laptops. *Id.*

A forensic image should include not just files, directory and an operating system but also unallocated or "free" space, as well as slack space. *Id.*, ¶ 8. These areas could contain previously deleted files and folders, which could then in turn be recovered during forensic analysis. *Id.* The format in which the "Madison," "Steven," and "Jonathan" Laptops were provided on the Images prevented IRG from being able to recover any previously deleted data. *See id.*

As a result, IRG received no Ladenheim emails from after April 1, 2011—when Defendants' acted on their plans to raid the subrogation business—as all such emails were

---

[7] The three Images Defendants produced were labeled "Steven [Ieronimo]," "Jonathan [Ladenheim]" and "Madison" (Salters's daughter and an unauthorized user of IRG's systems).

permanently deleted. *See* **Ex. I**, ¶¶ 9-10. (As mentioned previously, *Connolly's or Salters's email accounts were omitted from the Images in their entirety*.) IRG was left with certain emails from Ieronimo and a handful of emails from Madison Salters. *See id.*; **Ex. H**, 9-12.

When IRG raised the issue of spoliation during closing argument, amazingly, Bauchner replied:

Page 18

> **22** As an aside, your Honor, much has been made of
> **23** defendants' obligations under the TRO. Let me be clear.
> **24** Defendants have complied in every respect with that order.
> **25** Unfortunately, the order submitted by plaintiff, and

Page 19

> **1** presumably adopted by Judge Gertner, was internally
> **2** contradictory. It required both the return of certain
> **3** information and its destruction. And there's no language in
> **4** the order, your Honor, which carves out the purging of
> **5** personal information or copies. It says to provide this
> **6** information and to purge it plainly. To prevent spoliation,
> **7** however, counsel for defendants nevertheless made a copy of
> **8** the drives on all the computers, and although admittedly
> **9** there was some technical difficulties produced a copy to
> **10** plaintiff.
> **11** Defendants have in short produced everything
> **12** required by the TRO and have nothing in their possession,
> **13** custody or control.

**Ex. J** (18-22-19:13). Mindful that arbitration would follow, the Court deferred consideration of the issue until such time as a motion to confirm the arbitration award was filed in this action. **Ex. J** (44:23-45:23).

E.    <u>Defendant Ladenheim Tells All</u>

Ladenheim testified in the arbitration about the evolution of Defendants' position on surrendering the Laptops to IRG. Defendants' counsel's initial reaction was simply to give the Laptops back to IRG. *See* Ladenheim Deposition Transcript ("<u>Lad. Tr.</u>") attached as **Exhibit K** at (180:9-16); *see also* **Ex. C**. But prior to delivery Ladenheim informed

counsel that Defendants had loaded Microsoft Outlook software for Defendants' competing ISG Recoveries business onto the Laptops. **Ex. K** at (176:19-178:3). Thus, upon receipt of the Laptops, IRG would have full access to Defendants' emails sent and received through the secret ISGRecoveries.com addresses—including those to the NY Attorneys. *Id.* When Defendants' counsel learned of this development, he arranged to have the Laptops wiped clean of all data:

Page 180

20 **A. From my knowledge, it went from**
21 **returning the laptop to you might want to delete**
22 **the Outlook off of it because in case anyone, an**
23 **IT person that works for IRG is able to recover**
24 **deleted items somehow, because you always learn**

Page 181

1 **in life that there's a way you could possibly**
2 **sometimes find stuff, but to make sure that that**
3 **was purged. When it left my possession, all I**
4 **knew was that Outlook was being erased.**
5 Q. So there was discussions about the
6 potential for an IT person to recover materials
7 that may at some point have appeared through the
8 ISG Outlook E mail?
9 **A. Yeah.**
10 Q. That was a concern for your attorneys
11 or for the other defendants?
12 **A. Yeah. We had all kind of agreed on**
13 **that.**
14 Q. And how was that -- when you said
15 maybe delete the Outlook E mails, how was that
16 flagged for somebody? Who raised that issue?
17 **A. In all honesty, it might have been**
18 **myself. When I had a conversation with Greg,**
19 **you know, I don't even know if he knew that that**
20 **Outlook was on there, so saying to him as an**
21 **attorney who was defending us in this case, you**
22 **might want to know that the Outlook is on there.**
23 **You're saying you're returning this, I asked him**
24 **if he was aware.**

Page 182

1 **And he pretty much said he wasn't, let**
2 **me talk to John, we should probably have that**

| 3 | removed. |
|---|---|
| 4 | **Like I said, when I handed off that** |
| 5 | **laptop, it was to have Outlook removed.** |
| 6 | **Whatever happened after that left my hands, I** |
| 7 | **don't know why it did.** |

**Ex. K**; *see also* **Exhibit L** (56:13-57:12) (Salters's trial testimony acknowledging that Defendants initially planned to surrender laptops, but claiming he had the option to return or destroy IRG material); Affidavit of Steven Ieronimo, **Exhibit M**, ¶¶ 10-11 (NY Attorneys instructed Defendants to give Laptops back until they learned Defendants used ISG Recoveries email). In opposing IRG's request for injunctive and equitable relief, each of the Defendants signed an affidavit affirming the destruction of IRG materials:

> I affirm that I either returned to IRG, or purged from all electronic systems . . . any and all confidential and propriety information that [Defendants] transmitted or removed from IRG or otherwise acquired as a result of my work for or affiliation with IRG, including without limitation: customer information, claims files, materials, records, documents, electronic files, emails, electronic storage media, hard drives, mobile devices, data compilations, passwords, computer programs and/or data bases, or any confidential information, including without limitation information concerning prospects, methods, inventions, ideas, developments, business plans, claims, sales, products, marketing, finances, technology and employees and any copies of any of the foregoing, wherever and however contained or formatted.

*See* Affidavits attached as **Exhibit N**. IRG received only a handful of documents from Connolly, and a small FedEx box of files.

F.      <u>The NY Attorneys Instructed Defendants to Destroy Other Documents</u>

Defendants' destruction of evidence was not confined to the Laptops. Indeed, Ladenheim testified that counsel instructed Defendants to purge, delete or shred *anything* that had to do with IRG, including IRG Confidential Information and emails, emails Defendants sent using ISG Recoveries email accounts, emails in Defendants' personal email accounts and hard copies of documents:

Page 99

| 2 | Q. What did you do after the TRO issue |
|---|---|
| 3 | with respect to the documents that were in this |
| 4 | box? |

5      **A. I either put them back in the box and**
6      **put the box away, or they were already in the**
7      **box and I put the box away. They weren't**
8      **touched again.**
9      Q. You'll agree those files aren't here
10     today, correct?
11     **A. No. They're gone.**
12     Q. What happened to them?
13     **A. After that, you referred to the TRO, I**
14     **was instructed by my legal counsel at that point**
15     **in time, whether it be from him specifically or**
16     **whether it be an agreement that he had entered,**
17     **I don't specifically know the legal stuff with**
18     **that, was to destroy those materials.**
19     Q. So your attorney told you to destroy
20     the Park claims files that were contained in
21     that box?
22     **A. Specifically those files, no.**
23     **We were instructed to destroy any and**
24     **all information related to IRG's client base.**

Page 100

1      **Anything related to IRG or IRG's clients I was**
2      **instructed some time after that TRO to destroy**
3      **any evidence, anything we had in reference to**
4      **them.**
5      Q. And did you speak with your attorney
6      about this instruction?
7      **A. Yeah. He had E mailed me an affidavit**
8      **saying that I will be destroying, that I had**
9      **destroyed it either that day, I forget**
10     **specifically.**
11     Q. And do you recall if this was
12     Mr. Blankenship was the attorney that told you
13     to do this?
14     **A. At that time I was in contact with**
15     **Greg Blankenship.**
16     Q. And just so I understand, there was a
17     conversation during which Mr. Blankenship told
18     you to destroy any materials in your possession
19     that had to do with IRG?
20     **A. Correct.**
21     Q. And those instructions were not
22     limited to just materials that were on the IRG
23     laptop?
24     **A. It wasn't specific to the laptop per**

Page 101

1      **se. It was if you saved an E mail, if you saved**
2      **a claim file or a client E mail, you have it**

10

| 3 | saved on your computer, you had it saved in your |
| 4 | E mail system, delete it. If you have it saved |
| 5 | in your personal E mail, delete it. Delete |
| 6 | anything you have or any physical papers that |
| 7 | you might have printed, trash it, throw it away. |
| 8 | We're telling them that we're throwing |
| 9 | everything away, purge it. |
| 10 | Q. And were there any parameters set in |
| 11 | terms of the types of materials that you were |
| 12 | supposed to purge or throw away? |
| 13 | A. I was told everything, anything I had |
| 14 | in relation to, like I said, IRG or IRG's |
| 15 | clients, don't have it anymore. |
| 16 | Q. Did that include your communications |
| 17 | with Mr. Salters and Mr. Connolly that were on E |
| 18 | mail? |
| 19 | A. If it had to do with a client, yes. |
| 20 | If it had to do with how's the weather, no. |
| 21 | Q. Did you save the how's the weather E |
| 22 | mails? |
| 23 | A. No. |

Page 112

| 21 | Q. But do you know if those files after |
| 22 | the TRO issue were destroyed or returned to IRG? |
| 23 | A. I never had access to the files. What |
| 24 | was the word? |

Page 113

| 1 | Q. TRO, temporary restraining order. |
| 2 | A. If anything was set up in the new |
| 3 | system, Neil went in or John went in and purged |
| 4 | them, so they were destroyed as properly |
| 5 | supposed to do. |
| 6 | Q. And how about the hard copies of these |
| 7 | files? |
| 8 | A. I have no idea what happened with |
| 9 | those. |
| 10 | Q. But it wasn't you that handled them? |
| 11 | A. I'm in Plainview, they're in |
| 12 | Mamaroneck. Not the same place. |
| 13 | Q. But the instruction was delete, shred |
| 14 | or purge everything from your attorneys? |
| 15 | A. Yeah. |

Page 172

| 14 | Q. Well, you testified earlier that you |
| 15 | deleted information from your laptop. Do you |
| 16 | recall why? |

11

17    **A. The attorney that was representing me**
18    **at that point in time had told me to do that,**
19    **along with -- he had me sign an affidavit along**
20    **with that that I was doing that as well.**
21    **I can't remember the specifics as to**
22    **whether or not he told me to do it either for**
23    **good measure or if I was required to do that,**
24    **who made that requirement, I don't remember the**

Page 173

1    **specifics as to why I was doing it. He had told**
2    **me to do it and sign an affidavit that I had**
3    **done it.**
4    Q. Do you recall ever reading a specific
5    order or request from an order suggesting that
6    you needed to delete these materials?
7    **A. An order from a judgment or something**
8    **like that, I don't recall a specific one.**
9    Q. Is it fair to say that you did what
10    your attorney told you to do with respect to the
11    information in your possession?
12    **A. Yeah.**
13    Q. And just again to reiterate, what
14    precisely did -- you said it was
15    Mr. Blankenship?
16    **A. Yes.**
17    Q. What precisely did Mr. Blankenship
18    tell you to do?
19    **A. Any materials that we have from IRG,**
20    **whether it be client information, E mails that**
21    **were sent that we've referenced a few times here**
22    **today, files that we've referenced today,**
23    **anything to do with IRG or IRG's clients, to get**
24    **rid of it, anything that has any information,**

Page 174

1    **whatever it is.**

Page 178

4    Q. How about the E mails that were sent
5    using the IRG E mail address, were those
6    materials deleted?
7    **A. The ones that were forwarded to like**
8    **my Gmail account that we referenced today?**
9    Q. Any of those.
10    **A. At that point in time, myself, I**
11    **purged every bit of paper, electronic, any**
12    **information whatsoever pertaining to IRG, IRG**
13    **clients, et cetera, whatever extended into,**

| 14 | **everything was purged.** |
|----|----|
| 15 | Q. And that includes going into your |
| 16 | Gmail account to do that? |
| 17 | **A. Absolutely.** |
| 18 | Q. And the hard files, other than the few |
| 19 | documents that you've produced in response to my |
| 20 | document requests, you deleted or purged or |
| 21 | shredded everything you have? |
| 22 | **A. Correct** |

Page 182

| 8 | Q. Now, it's fair to say that in terms of |
|----|----|
| 9 | deleting materials from the laptop, you |
| 10 | physically didn't do that? |
| 11 | **A. I didn't delete Outlook, the actual** |
| 12 | **Outlook software itself. The E mails, I deleted** |
| 13 | **everything.** |
| 14 | Q. You personally deleted those? |
| 15 | **A. Yeah. As much as an individual user** |
| 16 | **without IT experience can delete something, I** |
| 17 | **deleted it.** |

**Ex. K**; *see also* Ieronimo Affidavit, **Ex. M**, ¶ 12 ("My New York attorneys also instructed me to delete from my personal AOL account any IRG materials that I had forwarded to that account, which I did."). Ladenheim testified further that Blankinship gave the other Defendants the same instruction to purge, delete or shred everything. **Ex. K** at (174:23-175:3).[8]

# ARGUMENT

## I. Sanctions for the NY Attorneys' Discovery Abuse and Violations of this Court's Orders are Appropriate

### A. The District Court Has Authority to Sanction the NY Attorneys

"It is beyond peradventure that all federal courts have the power, by statute, by rule, and by common law, to impose sanctions against recalcitrant lawyers and parties

---

[8] Ieronimo's sworn testimony also confirmed that Connolly and Salters instructed Ieronimo to retain files from Leading Insurance—in violation of the TRO—and to work those files after Judgment entered, and Ieronimo later discarded them. **Ex. M**, ¶¶ 13-15. No reading of the TRO could support Defendants' retention of hard copy documents. Salters testified that he deleted his Leading Insurance files on advice of counsel. **Ex. L** (76:12-77:1).

litigant." *Carlucci v. Piper Aircraft Corp., Inc.*, 775 F.2d 1440, 1446 (11th Cir. 1985).

Indeed, of "the few recognized common law exceptions to the American rule against fee

shifting, courts may award attorneys' fees where a party has 'acted in bad faith,

vexatiously, wantonly, or for oppressive reasons.'" *Estate of McIntyre v. U.S.*, 739 F. Supp.

2d 70, 75 (D. Mass. 2010). "The federal courts' power to award such fees arises from 'a

court's inherent power to police itself, thus serving the dual purposes of vindicating

judicial authority without resort to the more drastic sanctions available for contempt of

court and making the prevailing party whole for expenses caused by his opponent's

obstinacy.'" *Id.* Bad faith conduct may pervade the case to such an extent that it is not

possible to carve out only those expenses directly related to is conduct. *See id.* In those

circumstances, an award of reasonable fees and expenses for the entire litigation may be

justified. *Id.* Sanctions for a party's spoliation of evidence are also available under Fed. R.

Civ. P. 37. *See also* 28 U.S.C. § 1927 (attorney "who so multiplies the proceedings in any

case unreasonably and vexatiously may be required by the court to satisfy personally the

excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct");

*Swofford v. Esligner*, 671 F.Supp.2d 1274, 1287-88 (M.D. Fla. 2009) (holding attorney

David Lane jointly and severally liable for plaintiff's attorneys' fees pursuant to 28 U.S.C.

§ 1927 for his failure "to monitor compliance so that all relevant, discoverable information

[was] identified, retained and produced.").

    B.    <u>Spoliation and Sanctions</u>

    Spoliation is "the destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable

litigation." *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 215 (S.D.N.Y. 2003). Courts

have inherent authority to prevent abusive litigation practices provides the authority for

sanctions, including sanctions for spoliation. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). In awarding sanctions, the First Circuit considers the "prejudice to the non-offending party and the degree of fault of the offending party." *Driggin v. Am. Sec. Alarm Co.*, 141 F. Supp. 2d 113, 120 (D. Me. 2000) (*quoting Collazo-Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 29 (1st Cir. 1998)). "Generally, courts find prejudice where a party's ability to present its case or to defend is compromised." *Victor Stanley, Inc., v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010).

Where the spoliation is intentional, is undertaken in bad faith or where the prejudice to the opposing litigant is great, severe sanctions are appropriate.[9] *See, e.g., Victor Stanley*, 269 F.R.D. at 539-40 (default judgment on liability and defendant ordered to pay plaintiff's costs and legal fees allocable to spoliation or face up to two years in prison for defendant's bad faith permanent destruction of a significant quantity of relevant evidence); *Leon*, 464 F.3d at 958-961 (exercising inherent powers to dismiss case and award defendant $65,000 in attorneys' fees where plaintiff deliberately wiped laptop drive clean prior to returning it to employer); *E.E.O.C v. Fry's Elecs., Inc.*, -- F.Supp.2d --, 2012 WL 2576283 at *4 (W.D. Wash. July 3, 2012) (imposing $100,000 sanction and appointing special master to investigate undiscovered discovery abuses); *Stein, M.D. v. Clinical Data, Inc.*, No. 07-3418-BLS2, 2009 WL 3857445, at *6-8 (Mass. Super. Ct. Oct. 9, 2009) (sanctions of attorneys' fees and costs, dismissal of claims, and adverse inference assessed against litigant who, after court ordered turnover of his computer for examination, intentionally deleted evidence on hard drive). An award of attorneys' fees for spoliation is considered a less severe sanction, and the court's inquiry "focuses more on the

---

[9] A showing of bad faith, however, is not required; mishandling evidence through carelessness, which prejudices the opposing party, may warrant sanctions. *See Sacromona*, 106 F.3d at 447; *see also Trull v. Volkswagan of Am., Inc.*, 187 F.3d 88, 95 (1st Cir. 1999) ("our case law does not require bad faith or comparative bad motive [to award sanctions]").

conduct of the spoliating party than on whether documents were lost." *See, e.g.*, *Victor Stanley*, 269 F.R.D. at 536.

C. Sanctions Under Fed. R. Civ. P. 37

Fed. R. Civ. P. 37 also contemplates the entry of sanctions against an attorney for a violation of a discovery order. The Court may treat as contempt of court a party's failure to obey a court order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2)(A)(vii). Moreover, if a party fails to obey such an order, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis supplied).

## II. The Court Should Sanction the NY Attorneys

Here, an award of monetary sanctions against the NY Attorneys based on their intentional destruction of evidence is appropriate. *See Victor Stanley*, 269 F.R.D. at 536. The NY Attorneys orchestrated the permanent destruction virtually all relevant evidence in Defendants' possession and caused the Laptops to be wiped clean of all data, documents and communications, including their new isgrecoveries.com emails.[10] Ladenheim's testimony confirms that those ISG Recoveries emails alone included emails: (i) forwarding Confidential Information from IRG's computer systems (**Ex. K** at 64-66, 118-122, 127-128); (ii) demonstrating Defendants use of the "ISG" name in their competing subrogation

---

[10] The NY Attorneys' position that Judge Gertner ordered them to destroy evidence is absurd. First, no judge would ever order a party to destroy relevant evidence. Second, destruction is inconsistent with Defendants' preservation obligations, which counsel acknowledged in the Letter. Third, Blankinship's May 26, 2011 email and Ladenheim's testimony demonstrate this was not the NY Attorneys' initial interpretation of the TRO. Fourth, counsel's interpretation cannot be reconciled with the TRO's instruction to *return* all IRG information. Instead of seeking clarification from the District Court on a purported ambiguity in the TRO, the NY Attorneys took the extraordinary step of instructing Defendants to unilaterally and permanently destroy relevant evidence in their possession. There is no justification for this self-serving instruction.

business (*id.* at 69, 72-73, 77-79); (iii) diverting IRG's clients and checks to ISG Recoveries (*id.* at 75, 85-86, 111-112, 114); and (iv) suggesting to third parties implying that there was a continuing affiliation, connection, or association between Defendants and IRG (*id.* at 70-71). The ISG Recoveries emails alone would be highly relevant to IRG claims.[11] Moreover, those emails also included communications with the NY Attorneys that were contained on the Laptops, which the Court ordered Defendants to produce. **Ex. K**, p. 181; **Ex. M**, ¶¶ 10-11. Ladenheim also testified that Defendants accessed IRG's computer systems and downloaded files, but were instructed to shred those documents. **Ex. K** at (83, 87-89, 95-99, 110-113, 134-135). Defendants' permanent destruction of evidence is confirmed by IRG's expert witness and Defendants' failure to produce documents in the arbitration.[12]

The NY Attorneys' actions also violated the orders of this Court. First, the NY Attorneys' violated Judge Gertner's TRO ordering the Defendants to return within twenty-four hours any "electronic files . . . hard drives . . . computers . . . data bases or any confidential information" transmitted, removed or otherwise acquired as a result of their work for or affiliation with IRG.[13] Second, the NY Attorneys' violated two direct orders from Judge Young: (1) the June 9, 2011 order to deliver the Images to IRG immediately, inclusive of any attorney-client communications - **Ex. E** (14:7-15:23); and (2) the order to

---

[11] IRG's claims included Chapter 93A, Computer Fraud and Abuse Act, Tortious Interference, Misappropriation of Trade Secrets, Conversion, Civil Conspiracy and Unfair Competition.
[12] The NY Attorneys also caused the destruction of Connolly's and Salters's emails with their investor Paul Lagudi, and frustrated IRG's ability to investigate and pursue potential claims against Lagudi.
[13] The NY Attorneys' claim that Judge Gertner ordered them to return blank Laptops to IRG within twenty-four hours makes no sense. The only rational interpretation of that language required Defendants to return the Laptops and purge any duplicate copies of confidential information stored on their home computers so they could not use them to compete against IRG. Blankinship's letter demonstrates that was the NY Attorneys' initial interpretation of the TRO. Moreover, the NY Attorneys' strained reading of the TRO as requiring the destruction of electronic information fails to explain their instructions to shred hard copies of documents.

deliver the fully restored Images by Monday June 13, 2011 or produce a witness who could testify concerning the destruction of evidence - **Ex. F** (4:1-5:19; 153-155).

Then on June 13, 2011, the last day of trial, attorney Bauchner let the Court to believe that he had delivered the fully restored Images and complied with the Court's order. **Ex. G** (3:24-4:2). When IRG informed the Court during closing arguments that Defendants had failed to comply with the Court's orders, Bauchner falsely represented "Defendants have in short produced everything required by the TRO." **Ex. J** (18-19). But the Images contained *no* electronic documents from Salters and Connolly, and only live (and no deleted) data from Ladenheim and Ieronimo.

By counseling their clients to withhold and destroy all documents having anything to do with IRG and ISG, the NY Attorneys robbed IRG of any opportunity for a "speedy, just and inexpensive determination" of the District Court action or the arbitration. This caused IRG's costs and fees to increase dramatically. Indeed, virtually everything IRG did after the most highly relevant documents were destroyed was geared toward discovering facts that were reflected in the destroyed documents, or responding to Defendants' insincere arguments that they did nothing wrong. Those arguments were made possible by the NY Attorneys' advice to destroy evidence. Indeed, Connolly and Salters continued to deny such basic facts as the existence of ISG Recoveries or that they competed with IRG because they believed the relevant evidence had been destroyed. As a consequence, IRG was forced to incur substantial costs and fees in the District Court and the arbitration.

In view of the NY Attorneys' egregious conduct and the extreme prejudice to IRG, an award of sanctions against the NY Attorneys is warranted. By orchestrating the destruction of the most relevant evidence to IRG's claims, the NY Attorneys' actions so pervaded the case that it not possible to carve out only those expenses directly related to is

conduct. Accordingly, IRG requests the Court award IRG all of its attorneys' fees incurred in connection with the District Court litigation and the arbitration.

Moreover, the NY Attorneys' conduct raises issues of profound importance to the integrity of the arbitration process. The truth seeking process is undermined if sanctions are not imposed for the egregious conduct the NY Attorneys engaged in here. The NY Attorneys consciously attempted to cover their and their clients' tracks by instructing Defendants to delete anything that had to do with IRG. It is simply unacceptable for attorneys to instruct clients to destroy important evidence for the sake of self preservation. An award of attorneys' fees is entirely appropriate here. IRG requests the Court schedule a deadline for IRG to submit affidavits and/or documents in support of its requested costs and attorneys' fees.[14]

### III. The Court Should Order the NY Attorneys to Produce for *In Camera* Review All Instructions to Defendants to Destroy Evidence or Usurp IRG's Subrogation Business

To assist the Court in determining an appropriate sanction and whether a referral under Rule 83.6 is appropriate, IRG requests the Court order the NY Attorneys to produce for *in camera* review all communications concerning their instructions to destroy evidence.[15] No privilege applies to those communications, as an instruction to destroy relevant documents does not constitute giving or seeking legal advice. *See Micron Tech., Inc. v. Rambus Inc.,* 645 F.3d 1311, 1329-31 (Fed. Cir. 2011); *In re Sealed Case*, 754 F.2d 395, 398-99, 402-03 (D.C. Cir. 1985); *see also Craig v. A.H. Robins Co.*, 790 F.2d 1, 3 (1st Cir. 1986) (counsel's destruction of documents "bar[red] the invocation of an attorney-

---

[14] IRG also requests the Court award it such other and further relief as it deems just and proper pursuant to its inherent powers, or upon a finding of civil contempt against the NY Attorneys.

[15] The NY Attorneys have copies of those communications, and on October 7, 2011, attorney Michael Berg (Blankinship's partner) agreed to "preserve all evidence, whether found on computers or otherwise, in his firm's control which has any bearing on this case." That agreement was incorporated into the arbitrator's discovery schedule and orders.

client privilege"); *In re Ellis*, 425 Mass. 332, 336-37, 342 (1997) (attorney-client privilege is inapplicable where attorney engaged in a criminal or fraudulent act by scheming with their clients to file fraudulent personal injury and workers' compensation claims).[16] Alternatively, the Court could appoint a special master to investigate these and any other yet to be discovered discovery abuses by the NY Attorneys. *See E.E.O.C*, 2012 WL 2576283 at *4.

## CONCLUSION

For all the foregoing reasons, IRG respectfully requests the Court sanction the NY Attorneys for their spoliation of evidence and violations of the orders of this Court, award IRG its costs and attorneys' fees incurred in the District Court litigation and the arbitration, and schedule a deadline for IRG to file affidavits and/or documents in support of its requested costs and attorneys' fees.

Respectfully submitted,

INSURANCE RECOVERY GROUP, INC.,

By its attorneys,

*/s/ Joseph M. Downes III*
Lawrence S. Delaney (BBO No. 557063)
Joseph M. Downes III (BBO No. 655853)
Demeo & Associates, P.C.
One Lewis Wharf
Boston, MA  02110
Tel:(617) 263-2600
Fax: (617) 263-2300
ldelaney@jdemeo.com
Dated:  September 6, 2012        jdownes@jdemeo.com

---

[16] Based on the foregoing, the Court also should examine communications from the NY Attorneys reflecting advice to usurp the IRG's subrogation business.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to all registered participants as identified on the Notice of Electronic Filing on the above date, and by regular mail and email to D. Greg Blankinship at GBlankinship@mdpcelaw.com and Meiselman, Denlea, Packman, Carton & Eberz P.C., 1311 Mamaroneck Avenue, White Plains, New York 10605, and to Joshua Bauchner at jb@ansellgrimm.com and Ansell Grimm & Aaron, P.C., 1500 Lawrence Ave., Ocean Township, NJ 07712.

.

*/s/ Joseph M. Downes III*
Joseph M. Downes III