UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
INSURANCE RECOVERY GROUP, INC., )
                               )
            Plaintiff,         )
                               )        CIVIL ACTION
        v.                     )        NO. 11-10935-WGY
                               )
JOHN CONNOLLY, NEIL SALTERS,   )
JONATHAN LADENHEIM, STEVEN     )
IERONIMO and ISG RECOVERIES,   )
LLC,                           )
                               )
            Defendants.        )
_____)
```

YOUNG, D.J.                                September 30, 2013

MEMORANDUM AND ORDER

I.   **INTRODUCTION**

Insurance Recovery Group, Inc. ("IRG") moves for sanctions
against the law firm of Meiselman, Packman, Nealon, Scialabba &
Baker P.C.[1] ("Meiselman" or the "Firm"), a present member of the
Firm, D. Greg Blankinship ("Blankinship"), and an attorney
formerly associated with the Firm, Joshua S. Bauchner
("Bauchner") (collectively, the "Defendants' Counsel") for
allegedly counseling their clients to destroy evidence sought in
connection with a business-raiding suit between the clients and

---

[1] The law firm, formerly known as Meiselman, Denlea,
Packman, Carton & Eberz P.C., underwent a name change during the
pendency of this litigation.

IRG and, by so doing, violating court-issued discovery orders.
IRG additionally urges this Court to compel the Defendants'
Counsel to reimburse the costs and attorneys' fees that it
incurred in related court and arbitration proceedings.

### A.    Procedural Posture[2]

IRG filed this motion for sanctions against the Defendants'
Counsel on September 6, 2012, and appended a memorandum in
support.  Mot. Sanctions Against Defs.' Att'ys, ECF No. 22; Mem.
Supp. Mot. Sanctions Against Defs.' Att'ys ("IRG's Mem."), ECF
No. 23.  On November 2, 2012, the Defendants' Counsel submitted
a brief in opposition to IRG's motion.  Resp'ts' Mem. Law Opp'n
Pl.'s Mot. Sanctions ("Defs.' Counsel's Opp'n"), ECF No. 44.
IRG filed a reply brief on November 21, 2012, Reply Br. Supp.
Mot. Sanctions Against Defs.' Att'ys ("IRG's Reply"), ECF No.
52, to which the Defendants' Counsel responded with a sur-reply
brief less than a week later, Resp't's Sur-Reply Mem. Law Opp'n
Pl.'s Mot. Sanctions, ECF No. 55.  After entertaining oral
argument at a motion hearing held on November 26, 2012, the
Court took the matter under advisement.  Elec. Clerk's Notes,
Nov. 26, 2012, ECF No. 54.

### B.    Factual Background[3]

---

[2] Because prior proceedings comprise much of the factual
background in this case, the procedural posture is presented in
a truncated fashion here, limited to only those developments
that have taken place since the commencement of this offshoot
sanctions litigation.

IRG is principally engaged in the business of providing recovery services to insurance companies and self-insured businesses seeking government reimbursement funds to offset some of the costs associated with administering workers' compensation programs.  Notice Removal, Ex. A, Verified Compl. Injunctive Relief ("Compl.") ¶¶ 15, 19, ECF No. 1-2.  Looking to expand into the areas of workers' compensation, automobile subrogation, and property subrogation, IRG entered into discussions with John Connolly ("Connolly") and Neil Salters ("Salters"), two gentlemen with a demonstrated record of experience working in the subrogation space, to explore the possibility of founding a business dedicated to the management and collection of subrogation claims.  See id. ¶¶ 20-21.  Following a period of negotiation, the parties formed such a business -- named Insurance Subrogation Group ("ISG") -- as a subdivision of IRG, with the prospective (though not definitive) intent eventually to spin the business off as a separately operating joint venture.  Id. ¶¶ 26, 31.  In exchange for receiving monthly consulting fees and executive positions at the new company, Connolly and Salters each signed consulting agreements which contained, among other provisions, clauses prohibiting the pair of consultants from making use of any of IRG's confidential

---

[3] The following facts -- over which there is apparently no significant dispute -- derive from the pleadings, briefs, affidavits, and exhibits supplied by the parties in this case.

information for improper purposes, competing directly or indirectly with IRG, soliciting any of IRG's clients, or otherwise acting contrary to IRG's interests.  See id. ¶¶ 27-29. Two more consultants, Jonathan Ladenheim ("Ladenheim") and Steven Ieronimo ("Ieronimo"), were later hired to manage and support ISG's back office functions and signed consulting agreements with terms similar to those found in Connolly and Salters's agreements.  Id. ¶¶ 25, 33.

Eventually, the business relationship between IRG and the consultants at ISG soured.  IRG alleged that Connolly and Salters had secret talks with an outside investor to fund a breakaway from IRG, appropriated IRG's undisclosed claims and client information for personal gain, and diverted business to their new subrogation service company, ISG Recoveries, LLC ("ISG Recoveries").  See id. ¶¶ 72, 83, 93.  Thus, on May 18, 2011, IRG filed an action against ISG Recoveries and Connolly, Salters, Ladenheim, and Ieronimo (collectively, the "consultants") (collectively, with ISG Recoveries, the "Defendants") in the Massachusetts Superior Court sitting in and for the County of Suffolk, id. at 36, which the Defendants removed to the District of Massachusetts just six days later.[4]

---

[4] In a wide-ranging, eleven-count complaint, IRG sought equitable and legal remedies for alleged violations of contract, consumer-protection, and computer-fraud laws, among others.  See Compl. ¶¶ 98-164.

Notice Removal, ECF No. 1.  The Defendants retained Blankinship, Bauchner, and other Meiselman attorneys to represent them in the litigation with IRG.  <u>See</u> IRG's Mem. 1.

One week after submitting its complaint, IRG filed an emergency motion for a preliminary injunction to enjoin the Defendants from further violating the terms of their consulting agreements.  Pl.'s Emergency Mot. Prelim. Inj., ECF No. 2. Then-Judge Gertner granted the motion on May 26, 2011, and issued a ten-day temporary restraining order ("TRO") against the Defendants.  Elec. Order, May 26, 2011.  In a preliminary injunction order inscribing the details of the TRO,[5] Judge Gertner wrote the following:

Defendants . . . are hereby . . . .

. . . .

> 2. Ordered, within twenty-four hours of the issuance of this Order, to return to IRG any and all confidential and proprietary information that they transmitted or removed from IRG or otherwise acquired as a result of their work for or affiliation with IRG, including without limitation customer information, claims files, materials, records, documents, electronic files, emails, electronic storage media, hard drives,

---

[5] Technically, the preliminary injunction order submitted by the parties and available for review is a proposed draft that was neither signed nor dated.  <u>See</u> IRG's Mem., Ex. B, [Proposed] Prelim. Inj. 3, ECF No. 23-2.  Nevertheless, the parties act as though Judge Gertner's order is an operative document, <u>see, e.g.</u>, IRG's Mem. 4; Defs.' Counsel's Opp'n 3, so, for the purposes of this memorandum, this Court does the same.

>            mobile  devices,  data  compilations,  computers,
>            passwords,  computer  programs  and/or  data  bases,
>            or  any  confidential  information,  including
>            without  limitation  information  concerning
>            prospects,  methods,  inventions,  ideas,
>            developments,  business  plans,  claims,  sales,
>            products,  marketing,  finances,  technology  and
>            employees . . . and to purge from all electronic
>            systems  (e.g.,  computers)  all  such
>            information . . . .

IRG's Mem., Ex. B, [Proposed] Prelim. Inj. ("Prelim. Inj.

Order") 2-3, ECF No. 23-2.

In a letter addressed to then-Chief Judge Wolf[6] the day

after the entering of the TRO, Blankinship relayed some of the

challenges that the Defendants' Counsel encountered in meeting

Judge Gertner's twenty-four-hour deadline, due to the fact that

the IRG-owned laptops issued to each of the consultants that

were the subject of the TRO (the "IRG laptops") contained

"attorney-client privileged email communications between

Defendants and their counsel, emails that [were] not

confidential or proprietary IRG information which [were]

necessary for Defendants' defense . . ., and other emails that

[were] not confidential or proprietary . . . that may be

relevant to [the] action and whose destruction would be contrary

---

[6] This case was originally assigned to former Chief Judge
Wolf, see Elec. Notice, May 24, 2011.  Presumably because she
was serving as the district's emergency judge at the time (but
for reasons ultimately unknown to this Court), Judge Gertner
entered the order granting IRG's emergency motion, see Elec.
Order, May 26, 2011.  The case was later reassigned to this
Court on June 2, 2011.  See Elec. Order, June 2, 2011.

[to] counsel's preservation obligations."   Letter from D. Greg
Blankinship, Meiselman, Denlea, Packman, Carton & Eberz P.C., to
Hon. Mark W. Wolf, U.S. District Court for the District of Mass.
(May 27, 2011) ("Blankinship Letter") 1, ECF No. 7.   In an
effort to provide a workable alternative that would at once
comply with the TRO and maintain his clients' information in
confidence, Blankinship notified Chief Judge Wolf of the
Defendants' Counsel's plan of action:

> [The Defendants' Counsel] have determined that the
> proper course is to make a forensic copy of the
> computers, which will be promptly delivered to
> Defendants' counsel.  Once the emails in question have
> been removed from the IRG computers, we will make
> prompt arrangements for their return. . . .
> Defendants' counsel will then review the emails in
> question as quickly as possible and purge any
> confidential or proprietary information contained
> therein.

Id. at 2.

On June 2, 2011, the consultants returned the four IRG
laptops to IRG.   IRG's Mem. 5.   Computer experts hired by IRG
undertook an initial forensic review of the laptops' hard drives
the next day.   See IRG's Mem., Ex. I, Aff. Michael Perry ("Perry
Aff.") ¶ 4, ECF No. 23-9.   The experts found that each of the
hard drives had apparently been "zeroed out,"[7] suggesting that
"either the drives [had been] intentionally wiped of data or new

---

[7] "Zeroing out" describes the process of writing the
character "00h" across the entire hard drive.   Perry Aff. ¶ 5.

hard drives [had] been installed in each Laptop." Id. ¶ 5
(internal quotation marks omitted).

A four-day bench trial of IRG's claims commenced on June 9,
2011, before this Court. Elec. Clerk's Notes, June 9, 2011. On
the first day of the bench trial, IRG's counsel reported to the
Court that the IRG laptops received from the consultants were
"completely wiped of any information," Trial Tr. vol. 1, 10:10,
June 9, 2011, ECF No. 18, which "frustrated [IRG's] ability to
conduct [the bench trial and] figure out what exactly they took,
[and] what the state of the claims [were]," id. at 10:11-13.
Bauchner notified the Court of the Defendants' Counsel's
concerns regarding the sensitive information on the IRG
computers and of their retention of forensic experts to make
imaged copies of the computers' hard drives. See id. at 14:7-
19. Notwithstanding the Defendants' Counsel's misgivings, the
Court issued a protective order commanding the Defendants to
hand the copied hard drives over to IRG but allowing the
Defendants to reobtain any materials properly covered by the
attorney-client privilege. See id. at 14:21-15:23.

The following day at the bench trial, Bauchner informed the
Court that the forensic experts' efforts to recover the lost
material had been slowed by technical difficulties. Trial Tr.
vol. 2, 4:2-8, June 10, 2011, ECF No. 19. The Court, inferring
that the materials may have been destroyed, gave the Defendants

until June 13, 2011, either to restore the hard drive images or submit evidence explaining what caused the information on the IRG computers to disappear.  See id. at 153:20-25.  The Court further remarked that, aside from the order compelling production of the hard drive images, it would not enter any further discovery orders.  Id. at 154:17-21, 23-25.

On June 13, 2011, which marked the third day of trial, Bauchner provided IRG's counsel with a hard drive in open court, IRG's Mem., Ex. H, Aff. Lawrence S. Delaney ("Delaney Aff.") ¶ 5, ECF No. 23-8, and notified the Court that he had "produced the hard drive to counsel [that] morning," see Trial Tr. vol. 3, 3:24-25, June 13, 2011, ECF No. 16.  A review by IRG's computer experts revealed that the hard drive contained data from only three of the IRG laptops.  Perry Aff. ¶ 7.  This data was located in directories labeled "ISG01 -- Madison" (containing information pertaining to Salters's daughter, who was not authorized to use IRG systems), "ISG02 -- Steven" (containing information pertaining to Ieronimo), and "ISG03 -- Jonathan" (containing information pertaining to Ladenheim).  See id.; IRG's Mem. 6 n.7.  Moreover, the hard drive provided by Bauchner contained "dynamically provisioned" virtual hard disk images of the information on the IRG laptops, not identical "fixed

provisioned" forensic images.[8]  Perry Aff. ¶ 7 (internal
quotation marks omitted).  At IRG's counsel's behest, the
experts sifted through the hard drive to locate filtered emails
dated on or after April 1, 2011, see id. ¶ 10, which covered the
period in which the Defendants were believed to have conducted
their raid of IRG's subrogation business, IRG's Mem. 6.  The
experts recovered emails from only one of the consultants --
Ieronimo.[9]  See Perry Aff. ¶ 10; Delaney Aff. ¶ 9.  Hundreds of
emails sent to and from Ieronimo's IRG Recoveries email account
laid bare the consultants' plans to compete with ISG.  See
Delaney Aff. ¶ 11.

On June 16, 2011, after entertaining final arguments by the
parties, the Court found and ruled that the consultants breached
their respective consulting agreements with IRG.  Trial Tr. vol.
4, 46:3-11, June 16, 2011.  Consequently, the Court entered an
order enjoining Connolly and Salters from participating in the
subrogation business for nine months and enjoining all four

---

[8] Fixed provisioned forensic images of a hard drive
generally include unallocated space in which previously deleted
files and folders may be stored.  See Perry Aff. ¶ 8.
Dynamically provisioned images, however, do not contain
unallocated space, which evidently makes recovery of previously
deleted data from such images impossible.  See id.

[9] Twenty-two filtered emails sent to or from Madison Salters
were also recovered, see Delaney Aff. ¶ 9; see also Perry Aff.
¶ 10, but because these emails are of no import to the case at
bar, this memorandum omits any further discussion of them.

consultants from soliciting certain of IRG's customers.[10]  See
J., ECF No. 15.  The case was then administratively closed to
allow the parties to proceed with arbitration.  Elec. Clerk's
Notes, June 16, 2011.

    At a deposition held on January 6, 2012, in advance of the
arbitration, Ladenheim testified to the Defendants' Counsel's
purportedly shifting advice regarding the handling of his IRG
laptop.  Initially, Ladenheim opined, the Defendants' Counsel
simply instructed him to return the laptop to IRG, see IRG's
Mem., Ex. K, Ladenheim Dep. 180:9-16, Jan. 6, 2012, ECF No. 23-
11, but after the Defendants' Counsel learned that Ladenheim's
IRG Recoveries email account had been installed on the laptop,
this instruction eventually became a directive to delete and
dispose of "[a]ny materials that [they] ha[d] from IRG," id. at
173:19; see id. at 173:17-174:1, 177:8-18, regardless of whether
they were saved electronically, in physical form, or privileged,
id. at 100:16-101:9; 177:10-178:3.  Although Ladenheim attested
that Blankinship gave the other three consultants similar
orders, id. at 174:23-175:3, he was not so assured in his belief
that the other three received such a dictate, see id. at 175:4-
24.

---

[10] The Court tabled the issues relating to possible
spoliation and attorney misconduct for resolution at a later
date.  See Elec. Clerk's Notes, June 16, 2011.

On July 9, 2012, an arbitrator from the American
Arbitration Association awarded IRG a total of $1,865,812.08,
which included $264,912.08 in attorneys' fees, $5000 in expert
fees, and $27,900 in arbitration fees.[11]  Pl.'s Mem. Supp. Mot.
Reopen Case & Confirm Arbitration Award, Ex. B, Award Arbitrator
("Arbitral Award") 14-15, ECF No. 21-2.  On September 6, 2012,
IRG moved to reopen its civil action and confirm the arbitration
award issued.  Pl.'s Mot. Reopen Case & Confirm Arbitration
Award, ECF No. 20.  Just over a month later, the Court granted
IRG's request, confirming the arbitration award and entering
final judgment in favor of IRG.  Order Confirming Arbitration
Award ("Confirmation Arbitral Award"), ECF No. 40.

## II.  ANALYSIS

### A.    Standard of Review

IRG properly cites section 1927 of Title 28 of the United
States Code ("section 1927") and Federal Rule of Civil Procedure
37 ("Rule 37") as sources of the Court's authority to grant its
extant motion for sanctions and its request for attorneys' fees

---

[11] At the time of the award's issuance, Connolly stood as
the sole respondent in the arbitration (and the sole consultant
responsible for paying the award) -- IRG had earlier reached
settlements with both Ladenheim and Ieronimo, and Salters was
dismissed after having sought bankruptcy protection.  Pl.'s Mem.
Supp. Mot. Reopen Case & Confirm Arbitration Award, Ex. B, Award
Arbitrator 3-4, ECF No. 21-2.

and costs.[12]   See IRG's Mem. 13-16; IRG's Reply 8; see also

Galanis v. Szulik, 841 F. Supp. 2d 456, 460 (D. Mass. 2011)

(Gorton, J.), sanctions aff'd in part on reconsideration, 863 F.

Supp. 2d 123 (D. Mass. 2012) (Gorton, J.).   The relevant

standard of review applicable to a sanctions motion, however,

depends upon the particular authority invoked.

Section 1927 grants courts the latitude to impose upon

"[a]ny attorney . . . who so multiplies the proceedings in any

case unreasonably and vexatiously . . . the excess costs,

expenses, and attorneys' fees reasonably incurred because of

such conduct."   28 U.S.C. § 1927.   Sanctions meted out under the

auspices of 28 U.S.C. section 1927, however, cannot be founded

upon common error or ineptitude alone.   Jensen v. Phillips Screw

_____

[12]   IRG also avers that the Court's inherent powers could be
used to the same effect.   IRG's Mem. 13-15.   It is true that the
imposition of attorneys' fees and costs under a court's inherent
powers is permissible in a narrow set of circumstances,
including (1) where an attorney "willful[ly] disobe[ys] . . . a
court order," Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991)
(quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421
U.S. 240, 258 (1975)) (internal quotation marks omitted); and
(2) where an attorney "has acted in bad faith, vexatiously,
wantonly, or for oppressive reasons," id. at 45-46 (quoting
Alyeska, 421 U.S. at 258-59) (internal quotation marks omitted).
"Because of their very potency," however, "inherent powers must
be exercised with restraint and discretion."   Id. at 44.   As a
result, courts are instructed to exercise these powers only when
the remedy sought by the moving party will not be accomplished
by appealing to either 28 U.S.C. section 1927 or the Federal
Rules of Civil Procedure.   See Galanis v. Szulik, 841 F. Supp.
2d 456, 460 (D. Mass. 2011) (Gorton, J.), sanctions aff'd in
part on reconsideration, 863 F. Supp. 2d 123 (D. Mass. 2012)
(Gorton, J.).

Co., 546 F.3d 59, 64 (1st Cir. 2008).  Instead, though they need

not rise to a level warranting a stamp of bad faith, "an

attorney's actions must evince a studied disregard of the need

for an orderly judicial process, or add up to a reckless breach

of the lawyer's obligations as an officer of the court."  Id.

(citation omitted).

Rule 37 permits courts to levy sanctions against parties

that fail to comply with discovery orders.  See Fed. R. Civ. P.

37(b)(2)(A).  Unlike sanctions issued pursuant to section 1927,

however, the offending party need not have acted in bad faith in

order to suffer the consequences of a Rule 37 sanction.  Díaz-

Fonseca v. Puerto Rico, 451 F.3d 13, 26 (1st Cir. 2006).

### B.   Spoliation

"Spoliation" is a legal term of art used to refer to "the

destruction or alteration of evidence, or failure to preserve

evidence for use of the opposing party for pending or future

litigations."  Porcal v. Ciuffo, No. 10-cv-40016-TSH, 2011 WL

4499011, at *3 (D. Mass. Sept. 23, 2011) (Hillman, M.J.).

"[B]ad faith is not essential" to make out a spoliation claim.

Sacramona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 447 (1st

Cir. 1997).  That said, "bad faith is a proper and important

consideration in deciding whether and how to sanction conduct

resulting in the destruction of evidence."  Id.  Moreover, even

absent bad faith, the missing evidence must have been prejudicial to the nonspoliating party's ability to put on its case or mount a defense.  See id.; see also Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 29 (1st Cir. 1998) ("[O]f particular importance when considering the appropriateness of sanctions [for spoliation of evidence] is the prejudice to the non-offending party and the degree of fault of the offending party.").

Given the record as a whole, Defendants' Counsel did not exhibit the bad faith necessary to sustain a claim for spoliation sanctions.  IRG insists that the materials available in the record evince an intent on the part of the Defendants' Counsel to "orchestrate[] the permanent destruction [of] virtually all relevant evidence in [the consultants'] possession."  IRG's Mem. 16.  For support, IRG relies predominantly upon the sworn deposition testimony of Ladenheim, see id. at 16-17, who said that the Defendants' Counsel had instructed him to destroy "[a]ny materials that [the consultants] ha[d] from IRG," Ladenheim Dep. 173:19.

A singular affidavit -- especially one whose veracity is disputed by conflicting accounts -- cannot be fully credited.[13] Cf. In re Herbst, 76 B.R. 882, 885 (Bankr. D. Mass. 1987)

---

[13] Indeed, an earlier affidavit signed by Ladenheim made no mention whatsoever of any such instructions.  See Decl. Michael A. Berg, Ex. K, Aff. Jonathan Ladenheim, ECF No. 45-3.

(Queenan, Bankr. J.) (observing on a motion for summary judgment that "[w]hen comparing competing affidavits and materials submitted by the parties, a court must carefully scrutinize the moving party's papers while treating the opposing party's papers indulgently"). Neither Connolly nor Salters endorse Ladenheim's characterization that the Defendants' Counsel directed them to destroy any materials outside the scope of the TRO. See Defs.' Counsel's Opp'n, Attach. 2, Aff. John Connolly ("Connolly Aff.") ¶¶ 3-4, ECF No. 44-2; Defs.' Counsel's Opp'n, Attach. 4, Aff. Neil L. Salters ("Salters Aff.") ¶¶ 6-7, ECF No. 44-4; see also Trial Tr. vol. 3, 56:10-16 (relaying Salters's understanding under the TRO that he was required to "return IRG material or destroy IRG material," id. at 56:15-16, but failing to attribute that understanding to the Defendants' Counsel's communications). Ieronimo's affidavit serves partially to corroborate Ladenheim's version of the events. See IRG's Mem., Ex. M, Aff. Steven Ieronimo ¶¶ 10-12, ECF No. 23-13 (commenting on the Defendants' Counsel's departure from merely advising that the consultants return their laptops to IRG). Ieronimo, however, does not go so far as to say that the Defendants' Counsel instructed him to destroy evidence that was subject to the TRO. Id. ¶¶ 11-12 (noting that the Defendants' Counsel "told [Ieronimo] they would remove attorney-client emails from the laptops," id. ¶ 11 (emphasis added), and "instructed [Ieronimo] to delete from

[his] personal AOL account any IRG materials that [he] had
forwarded to that account," id. ¶ 12 (emphases added)).

Contrary to the statements in the competing affidavits, see
Connolly Aff. ¶ 5; Salters Aff. ¶ 8, however, there is evidence
in the record to support IRG's contention that the Defendants'
Counsel directed the consultants to discard physical (as well as
electronic) materials and did not specifically isolate documents
based on their putative privileged status, see, e.g., IRG's
Reply, Ex. B, Excerpts Meiselman Prod. ("Meiselman Emails") MD
000039, ECF No. 52-2 (transcribing an email from Blankinship to
Ieronimo and Ladenheim in which the former asked the latter to
confirm that they "ha[d] no electronic or paper copies of any
kind related in any way to [the] IRG or ISG subrogation
business").  Yet throughout the emails made available by the
parties, the Defendants' Counsel's intent to comply with the
terms of the TRO is evident.  See, e.g., id. ("[W]e do need to
be sure that we are in compliance with the May 26 Temporary
Restraining Order."); id. at MD 000111 ("[Ieronimo], attached is
the affidavit we need to submit to IRG counsel certifying that
you either do not have, or have purged, all IRG data and other
information.  We need to get this signed ASAP, but most
important is that it is correct.  You will be signing this under
the pains of perjury in a federal court -- you must be sure it
is accurate and that you have complied with everything

presented."); id. at MD 000113 ("[Ieronimo], you have to
immediately stop using [your IRG] computer.  Any personal
information or data should be removed ASAP.  We have told IRG
that they can pick up the computers immediately, and we are now
under a court order to do so."); id. at MD 000133 ("We need to
submit affidavits today for all four of you . . . . I cannot
emphasize enough the importance of being sure that we have
returned or deleted everything that counts as IRG data or
business documents before you sign the affidavits.").  Such
well-meaning motivation sufficiently undercuts IRG's spoliation
claim.  See Sacramona, 106 F.3d at 447 ("[B]ad faith is a proper
and important consideration in deciding whether and how to
sanction conduct resulting in the destruction of evidence.");
see also Jensen, 546 F.3d at 64 (mandating that, in order for a
court to issue sanctions under 28 U.S.C. section 1927, "an
attorney's actions must evince a studied disregard of the need
for an orderly judicial process").

     As additional proof of spoliative activity, IRG points to
the fact that (1) the laptops returned to IRG had been zeroed
out, (2) the images contained on the hard drive provided by
Bauchner were not forensic copies of the IRG laptops, and (3)
the hard drive contained no data from Salters or Connolly, nor
did it contain any ISG Recoveries emails from Ladenheim.  IRG's
Reply 1.  That the Defendants' Counsel played any role in

zeroing out the laptops or producing forensic copies of relevant data is far from obvious, as the responsibility of conducting forensic analysis was formally assigned to the Defendant's Counsel's computer consultant. See Defs.' Counsel's Opp'n, Attach. 1, Aff. D. Greg Blankinship ("Blankinship Aff.") ¶ 16, ECF No. 44-1. Moreover, in an email from the computer consultant to Blankinship sent during the course of the bench trial, the computer consultant represented that the hard drive contained "a full snapshot/clone of the PC[s] at the time of . . . backup." Decl. Michael A. Berg ("Berg Decl."), Ex. O, Email from Jeffrey M. Olsen to Greg Blankinship ("Olsen Email") (June 10, 2011, 3:24 PM), at 3, ECF No. 45-3. Finally, the recovery of scant data pertaining to Salters, Connolly, and Ladenheim is explained (at least ostensibly) by the fact that these consultants rarely used their laptops. See, e.g., Ladenheim Dep. 81:10-82:2; Berg Decl., Ex. O, Email from Greg Blankinship to Joshua Bauchner (June 16, 2011, 12:28 PM), at 1, ECF No. 45-3. There is insufficient evidence in the record, then, to adjudge Defendants' Counsel's conduct deserving of sanctions for spoliation.[14]

---

[14] A holding in the alternative -- that the Defendants' Counsel had in fact intentionally directed the consultants to destroy evidence -- does nothing to upend the Court's judgment. As stated above, in deciding whether to award sanctions for spoliation of evidence, a court must take into primary account whether the nonspoliating party suffered undue prejudice. See

## C.    Violation of Discovery Orders

IRG argues that even if the Defendants' Counsel's
actions did not themselves amount to spoliation, they
nevertheless violated both the orders by this Court to
produce the hard drive with mirrored images of the
information on the IRG laptops and the TRO entered by Judge
Gertner.  See IRG's Mem. 17-18.

IRG distorts the Defendants' Counsel's statement to
the Court regarding the delivery of the hard drive to IRG's
counsel.  While IRG argues that Bauchner "falsely
represented" that the hard drive presented on the third day
of trial contained mirrored images, id. at 18, Bauchner
merely reported that he had "produced the hard drive to

---

Sacramona, 106 F.3d at 447.  Spoliation is typically deemed to
have prejudicial effect "where a party's ability to present its
case or to defend is compromised." Victor Stanley, Inc. v.
Creative Pipe, Inc., 269 F.R.D. 497, 532 (D. Md. 2010).
    IRG first contends that the consultants' alleged
destruction of IRG- and ISG Recoveries-related data proved
detrimental to its ability to put on its case.  See IRG's Reply
8.  The merits of this claim are not borne out by the results of
the court and arbitration proceedings, however, where IRG
succeeded in prevailing over the consultants, see Arbitral
Award; Confirmation Arbitral Award, even without the aid of
discovery, see Trial Tr. vol. 2, 154:17-21, 23-25.  IRG's second
contention that the Defendants' Counsel's alleged misconduct
prevented a swift and cost-effective resolution of the dispute
with the consultants, see IRG's Reply 8, is wholly speculative,
as "[t]he considerations leading to a settlement are many and
varied; [and] at times . . . have little to do with the basic
facts of a case." Kinan v. City of Brockton, 876 F.2d 1029,
1034 (1st Cir. 1989).

counsel [that] morning," see Trial Tr. vol. 3, 3:24-25.
Given that the Defendants' Counsel's computer consultant
himself confirmed that true forensic copies of the
information on the IRG laptops had been produced, and that
the Defendants' Counsel were not ultimately responsible for
conducting the forensic analysis, see Blankinship Aff. ¶
16; Olsen Email 3, this Court cannot hold them liable for
the hard drives' missing or distorted contents.

The TRO gives rise to a thornier issue, however.
Judge Gertner commanded the consultants "to return to IRG
any and all confidential and proprietary information that
they transmitted or removed from IRG or otherwise acquired
as a result of their work for or affiliation with IRG . . .
and to purge from all electronic systems (e.g., computers)
all such information."  Prelim. Inj. Order 2-3 (first
emphasis added).  The language in the order constituted a
facial contradiction in terms, compelling the consultants
to both give back and destroy any and all of IRG's
confidential and proprietary information.  Courts have
found unjust the imposition of sanctions on the basis of a
violation of a discovery order that is subject to more than
one reasonable interpretation.  See, e.g., Pascale v. G. D.
Searle & Co., 90 F.R.D. 55, 59 (D.R.I. 1981).  The Court
finds eminently persuasive, however, IRG's assertion that

"[t]he only rational interpretation of [the language in the TRO] required Defendants to return the Laptops and purge any duplicate copies of confidential information stored on their home computers so they could not use them to compete against IRG."  IRG's Mem. 17 n.13.  This inference is further substantiated by the letter to Chief Judge Wolf, in which Blankinship acknowledged his clients' preservation obligations.  See Blankinship Letter 2 ("Once the emails in question have been removed from the IRG computers, we will make prompt arrangements for their return. . . . Defendants' counsel will then review the emails in question as quickly as possible and purge any confidential or proprietary information contained therein.").

Regardless of whether one could reasonably construe the ambiguity resident in the text of the TRO in multiple ways, one thing is certain: the Defendants' Counsel did not comply with the letter of the TRO.  See, e.g., Meiselman Emails MD 000039 (asking Ieronimo and Ladenheim to confirm that they "ha[d] no electronic or paper copies of any kind related in any way to [the] IRG or ISG subrogation business").  A plain reading of Rule 37 makes the award of reasonable expenses upon any violation of a discovery order, as a general matter, mandatory, not permissive.  See Fed. R. Civ. P. 37(b)(2)(C) (explaining that although

courts have before them a menu of options from which to choose when fashioning an appropriate sanction for failure to comply with a discovery order, they "<u>must</u> order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" (emphasis added)).  The rule carves out two exceptions, however, granting a court the leeway to withhold sanctions: (1) where "the failure was substantially justified" and (2) where "other circumstances make an award of expenses unjust."  <u>Id.</u>

The Defendants' Counsel cannot seek asylum under the first exception.  To be sure, the phrase "substantially justified" in Rule 37 does not require that the failure to comply with a discovery order be "justified to a high degree."  <u>Guam Indus. Servs., Inc.</u> v. <u>Zurich Am. Ins. Co.</u>, Nos. 11-00014, 11-0031, 2013 WL 4525228, at *2 (D. Guam Aug. 26, 2013) (quoting <u>Pierce</u> v. <u>Underwood</u>, 487 U.S. 552, 565 (1988)) (internal quotation marks omitted).  Rather, this standard is met if a reasonable person would be satisfied by the justification.  <u>Id.</u> (citing <u>Pierce</u>, 487 U.S. at 565).  As stated above, though, this Court takes the instructions by Judge Gertner to have been quite clear, and it holds that the failure to provide mirrored data from the IRG laptops and the Defendants' Counsel's instruction

to purge IRG-related information indiscriminately (without making special note of items in physical form or labeled privileged, or at least not doing so consistently) were not substantially justified.

The Defendants' Counsel cannot profit from the second exception, either. Courts have deemed the award of expenses unjust in only a limited set of circumstances. See, e.g., Cummings v. Standard Register Co., 265 F.3d. 56, 68 (1st Cir. 2001) (upholding a magistrate judge's determination that imposing sanctions on a company for "failing to produce documents before its time period for filing a response [to the plaintiff's initial request for attorneys' fees] . . . had expired would be 'unjust'"); Rachel-Smith v. FTData, Inc., 247 F. Supp. 2d 734, 739 (D. Md. 2003) ("Given the number and types of discovery disputes -- many of them de minimis -- that have occurred over the course of the present litigation, an award of fees here would be unjust."). Certainly, the record demonstrates the Defendants' Counsel's vigorous efforts to stay abreast of the litigation and, to the best of their ability, ensure that their clients did not retain any sensitive IRG information. Although at least one court has found that the absence of good faith in responding to a discovery order merits sanctions, see Chudacoff v. Univ.

Med. Ctr., No. 2:08-cv-00863-RCJ-GWF, 2013 WL 1737201, at
*3 (D. Nev. Apr. 22, 2013) (allowing the plaintiff to have
his expenses reimbursed under Rule 37(b)(2)(C) because
"Defendants[] and their counsel[] fail[ed] to reasonably
and in good faith comply with [the] Court's order [to
properly answer the plaintiff's interrogatories]"), there
is nothing in the case law to suggest that good-faith
noncompliance, in and of itself, is sufficient to prevent
the award of attorneys' fees under the "unjust" exception
inscribed in Rule 37(b)(2)(C).  Accordingly, IRG's claim
for attorneys' fees, based upon the Defendants' Counsel's
failure to comply with the discovery orders, may lie.

## III. CONCLUSION

For the foregoing reasons, IRG's motion for sanctions, ECF
No. 22, is DENIED IN PART AND GRANTED IN PART.  The motion is
DENIED to the extent that IRG seeks sanctions for spoliation.
The motion is GRANTED to the extent that IRG seeks costs and
attorneys' fees traceable to the Defendants' Counsel's failure
to comply with the discovery orders.  The Court grants IRG
thirty (30) days from the date of this memorandum and order to
submit documentation of the expenses for which it requests
reimbursement.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE