UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
INSURANCE RECOVERY GROUP, INC., )
                               )
          Plaintiff,           )
                               )
          v.                   )      CIVIL ACTION
                               )      NO. 11-10935-WGY
                               )
JOHN CONNOLLY, NEIL SALTERS,   )
JONATHAN LADENHEIM, STEVEN     )
IERONIMO and ISG RECOVERIES, LLC, )
                               )
          Defendants.          )
_____)
```

YOUNG, D.J.                                    March 26, 2015

<u>MEMORANDUM AND ORDER</u>

I.     **INTRODUCTION**

Insurance Recovery Group, Inc. ("IRG") seeks an award of

attorneys' fees and costs following this Court's order on

September 30, 2013, granting in part and denying in part IRG's

motion for sanctions against the law firm of Meiselman,

Packman, Nealon, Scialabba & Baker P.C.[1] ("Meiselman" or the

"Firm"), a present member of the Firm, D. Greg Blankinship

("Blankinship"), and an attorney formerly associated with the

Firm, Joshua S. Bauchner ("Bauchner") (collectively, the

"Defendants' Counsel").  <u>See</u> <u>IRG</u> v. <u>Connolly</u> (<u>IRG Sanctions</u>

<u>Order</u>), 977 F. Supp. 2d 16 (D. Mass. 2013).

---

[1] The law firm, formerly known as Meiselman, Denlea,
Packman, Carton & Eberz P.C., underwent a name change during
the pendency of this litigation.

1

IRG seeks to recover $94,346.00 in attorneys' fees and $6,506.34 in costs, for an aggregate total of $100,852.34. See Ins. Recovery Group, Inc.'s Submission Supp. Sept. 30, 2013, Award Costs & Att'ys' Fees ("IRG's Submission") 8, ECF No. 58; Reply Br. Supp. Pl.'s Fee Submission ("IRG's Reply") 8 n.11, ECF No. 66.

## II. FACTUAL & PROCEDURAL BACKGROUND[2]

On May 18, 2011, IRG filed an action against ISG Recoveries, LLC ("ISG Recoveries"), John Connolly ("Connolly"), Neil Salters ("Salters"), Jonathan Ladenheim ("Ladenheim"), and Steven Ieronimo ("Ieronimo") (collectively, the "Defendants") in the Massachusetts Superior Court sitting in and for the County of Suffolk, alleging (among other things) violations of consulting agreements. IRG Sanctions Order, 977 F. Supp. 2d at 19. The Defendants removed the case to the District of Massachusetts on May 24, 2011, and retained Blankinship, Bauchner, and other Meiselman attorneys to represent them in the litigation with IRG. Id.

On May 25, 2011, IRG filed an emergency motion for a preliminary injunction to enjoin the Defendants from further violating the terms of their consulting agreements. Id. Judge Gertner granted the motion on May 26, 2011, and issued a ten-day temporary restraining order ("TRO") against the

_____

[2] Because the operative facts are the same, much of this section of the memorandum is copied from this Court's earlier sanctions order and cites to that order accordingly for the sake of simplicity. For more detailed citations to relevant docket entries, refer to the original sanctions order.

Defendants.  Id.  In a preliminary injunction order inscribing

the details of the TRO,[3] Judge Gertner ordered the Defendants

"to return to IRG any and all confidential and proprietary

information that they transmitted or removed from IRG or

otherwise acquired as a result of their work for or

affiliation with IRG" within twenty-four hours.  Id. (internal

quotation marks omitted).

The day after the entering of the TRO, Blankinship

relayed to then-Chief Judge Wolf[4] the Defendants' Counsel's

challenge in meeting Judge Gertner's twenty-four-hour

deadline.  Id. at 20.  The four IRG-owned laptops subject to

the TRO (the "IRG laptops") contained "attorney-client

privileged email communications," emails "necessary for

Defendants' defense," and emails "that may be relevant to

[the] action and whose destruction would be contrary [to]

counsel's preservation obligations."  Id. (alterations in

original) (internal quotation marks omitted).  Therefore,

_____

[3] Technically, the preliminary injunction order submitted
by the parties and available for review is a proposed draft
that was neither signed nor dated.  Nevertheless, the parties
act as though Judge Gertner's order is an operative document;
for the purposes of this case, this Court does the same.  IRG
Sanctions Order, 977 F. Supp. 2d at 19 n.5.

[4] This case was originally assigned to former Chief Judge
Wolf.  Presumably because she was serving as the district's
emergency judge at the time (but for reasons ultimately
unknown to this Court), Judge Gertner entered the order
granting IRG's emergency motion.  The case was later
reassigned to this Court on June 2, 2011.  IRG Sanctions
Order, 977 F. Supp. 2d at 20 n.6.

Blankinship notified then-Chief Judge Wolf of the Defendants'
Counsel's plan

> [T]o make a forensic copy of the computers .
> . . [and] [o]nce the emails in question have
> been removed from the IRG computers . . .
> [to] make prompt arrangements for their
> return. . . . Defendants' counsel will then
> review the emails in question as quickly as
> possible and purge any confidential or
> proprietary information contained therein.

Id. (last alteration in original) (internal quotation marks
omitted).

On June 2, 2011, the Defendants returned the four IRG
laptops to IRG. Id. Computer experts hired by IRG undertook
an initial forensic review of the laptops' hard drives the
next day. Id. The experts found that each of the hard drives
had apparently been "zeroed out,"[5] suggesting that "either the
drives [had been] intentionally wiped of data or new hard
drives [had] been installed in each Laptop." Id. (alterations
in original) (internal quotation marks omitted).

A four-day bench trial of IRG's claims commenced before
this Court on June 9, 2011. Id. On the first day, IRG's
counsel reported to the Court that the laptops were missing
data and that it impaired their ability to effectively conduct
their case. Id. The Defendants' Counsel notified the Court
of their concerns regarding the sensitive information on the
IRG computers and of their retention of forensic experts to
make imaged copies of the computers' hard drives. Id. at 20-

---

[5] The "zeroing out" describes the process of writing the
character "00h" across the entire hard drive.

21.  The Court nevertheless issued a protective order commanding the Defendants to hand the copied hard drives over to IRG but allowing the Defendants to claim back any materials properly covered by the attorney-client privilege.  _Id._ at 21.

The following day at the bench trial, Bauchner informed the Court that the forensic experts' efforts to recover the lost material had been slowed by technical difficulties.  _Id._ The Court, inferring that the materials may have been destroyed, gave the Defendants until June 13, 2011, either to restore the hard drive images or submit evidence explaining what caused the information on the IRG computers to disappear. _Id._  On June 13, 2011, Bauchner provided IRG's counsel with a hard drive in open court and notified the Court accordingly. _Id._  A review by IRG's computer experts revealed that the hard drive contained data from only three of the IRG laptops.  _Id._ Moreover, the hard drive provided by Bauchner contained "dynamically provisioned" virtual hard disk images of the information on the IRG laptops, not identical "fixed provisioned" forensic images.[6]  _Id._  IRG's experts sifted

---

[6] Fixed provisioned forensic images of a hard drive generally include unallocated space in which previously deleted files and folders may be stored.  Dynamically provisioned images, however, do not contain unallocated space, which evidently makes recovery of previously deleted data from such images impossible.  _IRG Sanctions Order_, 977 F. Supp. 2d at 21 n.8.

through the hard drive and recovered emails from only one of
the Defendants, Ieronimo.[7]  Id.

On June 16, 2011, the Court found and ruled that the
Defendants breached their respective consulting agreements
with IRG.  Id.  The case was then administratively closed to
allow the parties to proceed with arbitration.  Id. at 22.

At a deposition held on January 6, 2012, in advance of
the arbitration, Ladenheim testified to the Defendants'
Counsel's purportedly shifting advice regarding the handling
of his IRG laptop.  Id.  On July 9, 2012, the arbitrator
awarded IRG a total of $1,865,812.08, which included
$264,912.08 in attorneys' fees, $5,000 in expert fees, and
$27,900 in arbitration fees.[8]  Id.  On September 6, 2012, IRG
moved to reopen its civil action and confirm the arbitration
award issued.  Id.  Just over a month later, the Court granted
IRG's request, confirming the arbitration award and entering
final judgment in favor of IRG.  Id.

On September 6, 2012, IRG filed a motion for sanctions
against the Defendants' Counsel alleging that they counseled
their clients to destroy evidence and, by doing so, violated

---

[7] Twenty-two filtered emails sent to or from Salters'
daughter were also recovered, but because these emails are of
no import to the case at bar, this memorandum omits any
further discussion of them.  IRG Sanctions Order, 977 F. Supp.
2d at 21 n.9.

[8] At the time of the award's issuance, Connolly stood as
the sole respondent in the arbitration (and the sole
consultant responsible for paying the award) - IRG had earlier
reached settlements with both Ladenheim and Ieronimo, and
Salters was dismissed after having sought bankruptcy
protection.  IRG Sanctions Order, 977 F. Supp. 2d at 22 n.11.

court-issued discovery orders.  Id. at 18.  On September 30,
2013, the motion was denied to the extent that IRG sought
sanctions for spoliation based on 28 U.S.C. section 1927, as
the Defendants' Counsel did not demonstrate the bad faith
necessary for such a claim.  Id. at 23, 27.  The Court
observed that "there is evidence in the record to support
IRG's contention that the Defendants' Counsel directed the
[Defendants] to discard physical (as well as electronic)
materials and did not specifically isolate documents based on
their putative privileged status."  Id. at 24.  The Court,
however, did not attribute to Defendants' Counsel
responsibility for "zeroing out the laptops or producing
forensic copies of relevant data," as the Defendants' computer
consultant was in charge of conducting analysis of the
laptops.  Id. at 25.

The motion was granted, however, to the extent that IRG
sought costs and attorneys' fees traceable to the Defendants'
Counsel's failure to comply with the discovery orders.  Id. at
27.  Regardless of how one might construe any ambiguities
latent in the TRO, the Defendants' Counsel did not comply with
the letter of the TRO and cannot benefit from either exception
to Federal Civil Procedure Rule 37 ("Rule 37") sanctions.  Id.
at 26-27.  The Court held that the award of expenses would not
be unjust and "that the failure to provide mirrored data from
the IRG laptops and the Defendants' Counsel's instruction to
purge IRG-related information indiscriminately (without making

special note of items in physical form or labeled privileged, or at least not doing so consistently) were not substantially justified." Id. at 27.

This Court granted IRG "thirty (30) days from the date of [the sanctions] memorandum and order to submit documentation of the expenses for which it requests reimbursement." Id. at 27-28.  On October 30, 2013, IRG filed a submission in support of its request for costs and fees, IRG's Submission, to which the Defendants' Counsel responded on November 8, 2013, Resp. Ins. Recovery Group, Inc.'s Submission Supp. Request Fees & Costs ("Defs.' Counsel's Resp."), ECF No. 63.  IRG submitted a reply brief on November 21, 2013.  IRG's Reply.

**III. ANALYSIS**

**A.   Entitlement to Attorneys' Fees**

On September 30, 2013, this Court held that Defendants' Counsel did not comply with the letter of the TRO and failed to comply with the discovery orders.  IRG Sanctions Order, 977 F. Supp. 2d at 27.  Rule 37 provides that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to comply with a discovery order], unless the failure was substantially justified or other circumstance make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).  As this Court previously stated in its order, under Rule 37, the award of reasonable expenses is mandatory and not permissive.  IRG

Sanctions Order, 977 F. Supp. 2d at 26. Therefore, IRG is entitled to attorneys' fees and costs but only to the extent that these are traceable to Defendants' Counsel's failures. IRG has the burden, however, of submitted documentation in support of the hours and rates claimed. Norkunas v. HPT Cambridge, LLC, 969 F. Supp. 2d 184, 195 (D. Mass. 2013). This Court may reduce the award requested "[w]here the documentation of hours is inadequate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

**B. Reasonable Attorneys' Fees**

With broad discretion, this Court determines the reasonable fees and costs to be awarded. McDonough v. City of Quincy, 353 F. Supp. 2d 179, 183 (D. Mass. 2005). In order to determine the award, the Court will rely on the "lodestar method." See Conservation Law Found. v. Patrick, 767 F. Supp. 2d 244, 250 (D. Mass. 2011). Under this approach, the Court will multiply "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley, 461 U.S. at 433. "While the Court may adjust the lodestar amount in response to factors of each particular case, the lodestar figure does presumptively represent a reasonable award of fees." EEOC v. AutoZone, Inc., 934 F. Supp. 2d 342, 347 (D. Mass. 2013).

Table 1 represents the amount of attorneys' fees requested by IRG for each attorney: Joseph M. Downes ("Downes"), Lawrence S. Delaney ("Delaney"), Joseph L. Demeo

("Demeo"), and Ellee McKim ("McKim"). See IRG's Submission 7;
IRG's Reply 8 n.11. Table 2 represents the amount of
attorneys' fees requested by category. See IRG's Submission,
Ex. A, IRG Attorneys' Fees by Category ("Fees by Category"),
ECF No. 58-1; IRG's Reply, Ex. E, Invoice ("IRG's Supplemental
Invoice"), ECF No. 66-5.

Table 1: Requested Fees by Attorney

| Name | Position | Hours | Hourly Rate | Fee Amount |
|---|---|---|---|---|
| Joseph M. Downes | Partner[9] | 192.3 | $295 | $56,728.50 |
| Lawrence S. Delaney | Partner | 89.7 | $325 | $29,152.50 |
| Joseph L. Demeo | Managing Partner | 3.5 | $325 | $1,137.50 |
| Ellee McKim | Associate | 5.9 | $225 | $1,327.50 |
| Submission Documentation Fee Request | | | | $6,000.00 |
| **Total Requested Fees** | | | | **$94,346.00** |

Table 2: Requested Fees by Category

| Category | Name | Position | Hours | Hourly Rate | Fee Amount |
|---|---|---|---|---|---|
| Initial Triage of Laptops and Images | Joseph M. Downes | Partner | 3.1 | $295 | $914.50 |
| | Lawrence S. Delaney | Partner | 19.8 | $325 | $6,435.00 |
| | Joseph L. Demeo | Managing Partner | 3.5 | $325 | $1,137.50 |
| | Ellee McKim | Associate | 5.9 | $225 | $1,327.50 |
| **Total Requested Fees for Triage** | | | | | **$9,814.50** |
| Attorneys' Fees Relating to Elysium's Expert | Joseph M. Downes | Partner | 6.8 | $295 | $2,006.00 |
| | Lawrence | Partner | 15.5 | $325 | $5,037.50 |

---

[9] Downes has left Demeo, LLP, formerly known as Demeo &
Associates, P.C., and is now a partner at the law firm of
Downes McMahon LLP.

| | | | | | |
|---|---|---|---|---|---|
| Testimony | S. Delaney | | | | |
| **Total Requested Fees for Expert Testimony** | | | | | **$7,043.50** |
| Motion for Sanctions Against | Joseph M. Downes | Partner | 45.3 | $295 | $13,363.50 |
| Defendants' Counsel | Lawrence S. Delaney | Partner | 2.9 | $325 | $942.50 |
| **Total Requested Fees for Motion Sanctions** | | | | | **$14,306.00** |
| Subsequent Motion Practice and | Joseph M. Downes | Partner | 47.1 | $295 | $13,894.50 |
| Briefs | Lawrence S. Delaney | Partner | 19.5 | $325 | $6,337.50 |
| **Total Requested Fees for Subsequent Practice** | | | | | **$20,232.00** |
| Post-Motion Discovery Initiated by | Joseph M. Downes | Partner | 27.8 | $295 | $8,201.00 |
| Defendants' Counsel | Lawrence S. Delaney | Partner | 4.6 | $325 | $1,495.00 |
| **Total Requested Fees for Discovery** | | | | | **$9,696.00** |
| Motions to Compel | Joseph M. Downes | Partner | 27.7 | $295 | $8,171.50 |
| | Lawrence S. Delaney | Partner | 3.1 | $325 | $1,007.50 |
| **Total Requested Fees for Motions to Compel** | | | | | **$9,179.00** |
| Presentation of Alternate Evidence at | Joseph M. Downes | Partner | 34.5 | $295 | $10,177.50 |
| Trial | Lawrence S. Delaney | Partner | 24.3 | $325 | $7,897.50 |
| **Total Requested Fees for Presentation of Evidence** | | | | | **$18,075.00** |
| **Submission Documentation Fee Request** | | | | | **$6,000.00** |
| **TOTAL REQUESTED HOURS** | | | **291.4** | | |
| **TOTAL REQUESTED ATTORNEYS' FEES** | | | | | **$94,346.00** |

## 1.    Reasonable Hours Expended

The Court must examine the billing records submitted by

IRG to evaluate whether the hours its attorneys expended were

reasonable.  See Norkunas, 969 F. Supp. 2d at 195.  After

determining the hours actually spent by the attorneys, the

Court "deducts those hours that were insufficiently documented

or 'duplicative, unproductive, excessive, or otherwise

unnecessary.'"  AutoZone, 934 F. Supp. 2d at 348 (quoting

Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir.

1984)).

### a.  Block Billing

IRG's submitted billing records contain a breakdown of

fees allegedly traceable to Defendants' Counsel's failures and

excerpts of IRG's attorneys' invoices.  See Fees by Category;

IRG's Submission, Ex. B, IRG Attorneys' Fees by Date ("Fees by

Date"), ECF No. 58-2; IRG's Submission, Ex. C, Excerpts from

Attorneys' Invoices ("IRG's Attorneys' Invoices"), ECF No. 58-

3.  As the Defendants' Counsel correctly argues, many entries

in this documentation are block billed.  Defs.' Counsel's

Resp. 5-6.  "'Block billing' is an industry term used to

describe the time-keeping method by which an attorney lumps

together the total daily time spent working on a case, rather

than itemizing the time expended on specific tasks."

AutoZone, 934 F. Supp. 2d at 354 (internal quotations

omitted).  The courts disfavor block billing and have broad

discretion in reducing fees requests, generally through an

"across-the-board global fee reduction[]."  Id. at 355; see

also Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st

Cir. 2008).

IRG's attorneys defined categories for and color-coded their billing entries. See Fees by Category; Fees by Date. This process does not allow, however, sufficient specificity to determine the time spent on each particular task within the more broadly defined categories. While it does offer breakdowns of its attorneys' work by category and date, IRG does not demonstrate the time actually spent on each discrete task. Therefore, the Court cannot evaluate the reasonableness of the hours expended. Accordingly, this Court globally reduces IRG's fees award by twenty percent, to be applied after more specific deductions are made. See, e.g., Norkunas, 969 F. Supp. 2d at 197; AutoZone, 934 F. Supp. 2d at 355; Conservation Law Found., 767 F. Supp. 2d at 253.

### b. Unsuccessful Claim

The Defendants' Counsel argue that IRG's fee request ought be reduced for the time spent on the spoliation issue, as this Court denied IRG's sanctions motion on such ground. Defs.' Counsel's Resp. 4. An unsuccessful claim, however, does not automatically prevent the moving party from recovering fees for the time spent on the issue. Where both successful and unsuccessful claims "arose from the same common core of facts or were based on related legal theories," there is no need to apply a reduction in the time spent. Bogan v. City of Boston, 489 F.3d 417, 428 (1st Cir. 2007). Moreover, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure

13

to reach certain grounds is not a sufficient reason for reducing a fee." Hensley, 461 U.S. at 435.

IRG sought to sanction Defendants' Counsel's behavior regarding discovery of the data on the IRG laptops. While this Court did not hold the Defendants' Counsel responsible for the spoliation of the evidence, it recognized their failure to comply with the discovery orders. IRG Sanctions Order, 977 F. Supp. 2d at 27. Those orders mainly concerned access to the IRG laptops and the data they contained; therefore, the same common core of facts constituted the basis for both issues regarding Defendants' Counsel's conduct during discovery. This Court thus concludes that IRG is entitled to fees for the time spent on all the issues it pressed.

### c. Administrative and Clerical Tasks

Defendants' Counsel argue that IRG's attorneys inappropriately request fees for time spent on administrative and clerical tasks. Defs.' Counsel's Resp. 7. The First Circuit has established that "clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them." Lipsett v. Blanco, 975 F.2d 934, 940 (1st Cir. 1992). Though there is no exhaustive and specific list of tasks recognized as administrative, "[c]ourts have generally regarded the following activities as administrative or clerical functions for which proportionate fee deductions ought be imposed: document preparation, organization, distribution, and copying; drafting emails and other

correspondence; data collection; legal cite-checking; scheduling and logistical planning; filing court documents; factual research; and docket review and management."
AutoZone, 934 F. Supp. 2d at 353-54.

The legal or administrative character of a task may be hard to determine and may even not always be independent from the legal character of that same task. See id. at 354. The Defendants' Counsel, for example, mention a series of entries related to emails. See Defs.' Counsel's Resp. 7-8. There is nothing, however, that indicates to the court that these emails were "nonlegal" in nature. Cf. Currier v. United Techs. Corp., No. 02-107-P-H, 2005 WL 1217278, at *2 (D. Me. May 23, 2005) (noting the Court's inability to verify the administrative or legal character of emails mainly addressed to clients). While the majority of the entries sufficiently describe the subject of the task, this Court concedes that some entries contain tasks that could perhaps be considered as administrative: for example, 6/3/2011 – LSD – "drafted letter to Blankinship"; 2/22/2012 – LSD – "email to Elysium regarding dropbox access"; 2/28/2012 – JMD – "call and emails with Elysium"; 4/23/2012 – JMD – "email Elysium for CV"; 8/27/2012 – JMD – "email"; 8/28/2012 – JMD – "[b]egin compiling exhibits for motion for sanctions"; and 11/10/2012 – JMD – "email draft brief to David and Fred; email summary of exhibits to Larry." IRG's Attorneys' Invoices 5, 17, 23, 32, 43. Though "time spent on administrative and clerical tasks has at least some

value," <u>AutoZone</u>, 934 F. Supp. 2d at 354, the hours IRG's
attorneys spent on these tasks ought be billed at a lower
rate. Those potentially problematic entries, however,
represent an insignificant fraction of the hours spent and the
Court does not deem it necessary to reduce the hours requested
on such ground.

### d. Excessive Billing

Defendants' Counsel mainly argue that IRG requests fees
not traceable to their failure to comply with the discovery
orders or that IRG grossly inflated the hours spent. <u>See</u>
Defs.' Counsel's Resp. 3-7. Since IRG classified the alleged
traceable entries in different categories, the Court will
review them successively and determine if IRG's attorneys
excessively billed.[10]

### i. Excessive Conferencing

Before addressing the different categories, this Court
first observes that IRG's attorneys spent some time conferring
among themselves during the preparation of this case. <u>See,
e.g.</u>, IRG's Attorneys' Invoices 3, 5, 8, 16-17, 19, 31, 34-35,
42, 49. This Court has previously observed that conferencing
is a common and frequently necessary practice for attorneys
addressing a case. <u>Conservation Law Found</u>., 767 F. Supp. 2d
at 254. On the other hand, it also emphasized that the

---

[10] The Court relies mainly on the documents previously
titled as Fees by Category, IRG's Attorneys' Invoices, and
IRG's Supplemental Invoice.

adversary should not pay for excessive conferencing.  Id.
Though block billing rendered this task difficult, this Court
has globally evaluated that IRG's attorneys spent around ten
hours conferring among themselves for the whole course of the
case.[11]  This strikes the Court as a reasonable amount of time
for IRG's attorneys to confer with one another to determine
their course of action in this case; accordingly, the Court
will not reduce the number of hours included in the lodestar
for any excessive billing.

### ii.  Initial Triage of Laptops

The first category of fees concerns the initial triage of
laptops and images.  The Defendants' Counsel correctly note
that this Court did not hold Counsel responsible for zeroing
out the laptops and the hard drives' missing or distorted
content.  IRG Sanctions Order, 977 F. Supp. 2d at 25.  Relying
on this holding, Defendants' Counsel contend that none of the
time spent on the triage is traceable to their failure to
comply with the discovery orders.  Defs.' Counsel's Resp. 3-4.
The discovery orders, however, concerned the laptops and their
data, and this Court held Defendants' Counsel responsible for
their "failure to provide mirrored data from the IRG laptops
and the Defendants' Counsel's instruction to purge IRG-related
information indiscriminately."  IRG Sanctions Order, 977 F.

---

[11] The Court has examined every entry referring to
conference and strategy among the attorneys.  To evaluate the
hours in the block billed entries, the Court used the time
generally spent on such tasks in the other entries (0.4).  See
IRG's Attorneys' Invoices 5, 35, 38, 42, 44.

Supp. 2d at 27.  Therefore, this Court is not convinced that this category should be eliminated.

When finally handed the hard drives, IRG's attorneys had to deal with data that was altered from its original format and, understandably, cautiously had to determine the damage as well as their legal strategy regarding Defendants' Counsel's conduct.  The approach taken by IRG's attorneys would not have been the same had they directly received the laptops because they would have had no reason to examine further the information given and the possible missing data.  Many entries in this category concern contact IRG's attorneys had with their client, Elysium (the expert they hired to analyze the hard drives), and the Defendants' Counsel.  These entries specifically concern the laptops and their data and would not have taken place but for Defendants' Counsel's failures.  See, e.g., IRG's Attorneys' Invoices 5, 7.

Additionally, the Defendants' Counsel contest the time spent by IRG's attorneys on spoliation-related research during the triage.  Regarding these hours, see IRG's Attorneys' Invoices 6-8, this Court holds that, as stated supra, IRG's attorneys' fees ought not be reduced for time dedicated to the spoliation claim.  Therefore, this Court deems it appropriate to award IRG the fees requested for the time spent on the initial triage of laptops and images.

### iii. Elysium's Expert Testimony

IRG's attorneys' choice to contact an expert is traceable to the Defendants' Counsel's failure to comply with the discovery orders.  As for the analysis of the laptops and their data, IRG's attorneys would not have contacted Elysium and asked for testimony but for the Defendants' Counsel's failure to provide mirrored images and indiscriminate purging of IRG-related data.  The work of the expert was therefore demanding, as IRG's attorneys had to determine with him the implications of the purging and the actual state of the laptops.  Most of the entries submitted by IRG concern emails and calls to Elysium, and the Court does not observe any particular excess in the time spent (though the block billing admittedly rendered this task more complicated).  Therefore, this Court deems it adequate to grant IRG the time requested for Elysium's expert testimony.

### iv.  Motion for Sanctions

This Court has already held <u>supra</u> that the time spent on the motion for sanctions against Defendants' Counsel ought not be reduced despite IRG's lack of success on its claim of spoliation.  IRG would not have filed the motion for sanctions had it not been for Defendants' Counsel's misconduct regarding discovery orders.  Therefore, the time IRG's attorneys spent on the motion for sanctions is traceable to Defendants' Counsel's failure and ought be compensated.  Contrary to Defendants' Counsel's argument, <u>see</u> Defs.' Counsel's Resp. 4, this Court does not detect any particular inflation or

excessiveness in the time IRG's attorneys spent preparing the
motion for sanctions and therefore grants the hours requested
by IRG.

### v. Subsequent Motion Practice and Briefs

Though the motion for sanctions was reasonable and
traceable to Defendants' Counsel's failure to comply with the
discovery orders, this Court agrees with Defendants' Counsel
that the time spent on subsequent motion practice and briefs
is excessive.  See id. at 4-5.  While it is true that
Defendants' Counsel filed many motions and briefs in the
proceedings, see IRG's Submission 3, this Court considers that
this is inherent in all litigation.  It was the strategic
choice of IRG's attorneys to address all the issues.  Both
Downes and Delaney are competent and experienced lawyers, see
id. at 7, and ought be able to deal more efficiently with this
case than non-experienced lawyers.  See Grendel's Den, 749
F.2d at 953-54; Iverson v. Braintree Prop. Assocs. L.P., No
04-cv-12079-NG, 2008 WL 552652, at *3 (D. Mass. Feb. 26, 2008)
(Gertner, J.).  For example, the two attorneys collectively
spent roughly 50 hours drafting a ten-page brief replying to
the Defendants' Counsel's opposition to the motion for
sanctions.  See Attorneys' Invoices 42-43 (showing that Downes
worked 32.3 hours on this issue and that Delaney worked 17.2
hours).  Taking into account the experience of these two
lawyers, the Court considers this time excessive and decides
to reduce the hours requested on these entries for both

lawyers by one-half, crediting 16.15 hours to Downes and 8.6
hours to Delaney.

### vi.  Post-Motion Discovery

Regarding the post-motion discovery initiated by
Defendants' Counsel, this Court determines that the time
requested ought not be reduced.  IRG's attorneys' time spent
on the discovery is directly linked to the sanctions motion.
This Court takes into account Defendant's Counsel's argument
that some of the time was spent on discovery related to
spoliation issues.  <u>See</u> Defs.' Counsel's Resp. 5.  As already
stated, however, this Court does not deem it appropriate to
reduce the time spent on the motion despite IRG's lack of
success on the spoliation claim.  Reviewing the entries
submitted by IRG's attorneys, this Court does not observe any
unproductive or excessive billing for the production or review
of documents in post-motion discovery.  Therefore, this Court
awards the hours requested by IRG for the time spent on the
discovery initiated by the Defendants' Counsel.

### vii. Motions to Compel

Defendants' Counsel argues that IRG subsequently filed
unnecessary motions to compel in the arbitration and Salters
bankruptcy proceedings.  <u>See</u> <u>id.</u>  This Court is persuaded by
IRG's argument that Defendants' Counsel's position was
sufficiently unclear that IRG's attorneys necessarily had to
look for more precision as to the actual information available
for production.  <u>See</u> IRG's Reply 3-4.  Moreover, had the

Defendants responded to the first motion, IRG would not have had to file the subsequent ones. The Court does not note any particular excessive billing in this category and therefore deems it appropriate to award IRG's fee request for the time spent on the motions to compel.

### viii. Alternate Evidence

Furthermore, IRG requests in its reply fees for the time spent presenting alternate evidence at trial. <u>See</u> IRG's Reply 6-8. The time requested, however, ought be reduced, as the presence of two lawyers in the courtroom,[12] while probably strategic and understandable, cannot be compensated. <u>See</u> <u>Conservation Law Found.</u>, 767 F. Supp. 2d at 253; <u>McDonough</u>, 353 F. Supp. 2d at 185. Because some of the entries present duplicative work but cannot be isolated due to block billing, this Court decides to reduce by one-half the following hours billed by Joseph M. Downes[13]: "prepare for and attend Day 3 of trial" – 9.0 hours, and "prepare for and attend trial Day 4" – 8.1 hours, totaling 17.1 hours. <u>See</u> <u>McDonough</u>, 353 F. Supp. 2d at 185. Therefore, this Court will grant Downes 25.95 hours for his work presenting alternative evidence at trial.

---

[12] Both Downes and Delaney introduced entries for their time at trial. <u>See</u> IRG's Supplemental Invoice 4-5.

[13] Without judging the work or the importance of Downes and Delaney at trial, the Court decided to reduce the hours of the former rather than the latter for practical reasons: Downes' entries contain only the time spent on trial, whereas Delaney's entries contain different tasks (making it more difficult for the Court to determine the time allocated to the trial itself). <u>See</u> IRG's Supplemental Invoice 4-5.

### ix. Submission of Documentation

Finally, IRG requests $6,000.00 for the submission of documentation supporting its fee request. IRG, however, does not provide any information establishing the hours and the rates used to reach this figure. Therefore, this Court denies the $6,000.00 request.

### 2. Summary of Hours Compensated

Table 3: Hours Compensated

| Category | Name | Position | Hours Requested | Hours Granted |
|---|---|---|---|---|
| Initial Triage of Laptops and Images | Joseph M. Downes | Partner | 3.1 | 3.1 |
| | Lawrence S. Delaney | Partner | 19.8 | 19.8 |
| | Joseph L. Demeo | Managing Partner | 3.5 | 3.5 |
| | Ellee McKim | Associate | 5.9 | 5.9 |
| **Total Hours for Triage** | | | **32.3** | **32.3** |
| Attorneys' Fees Relating to Elysium's Expert Testimony | Joseph M. Downes | Partner | 6.8 | 6.8 |
| | Lawrence S. Delaney | Partner | 15.5 | 15.5 |
| **Total Hours for Expert Testimony** | | | **22.3** | **22.3** |
| Motion for Sanctions Against Defendants' Counsel | Joseph M. Downes | Partner | 45.3 | 45.3 |
| | Lawrence S. Delaney | Partner | 2.9 | 2.9 |
| **Total Hours for Motion Sanctions** | | | **48.2** | **48.2** |
| Subsequent Motion Practice and Briefs | Joseph M. Downes | Partner | 47.1 | 30.95 |
| | Lawrence S. Delaney | Partner | 19.5 | 10.9 |
| **Total Hours for Subsequent Practice** | | | **66.6** | **41.85** |
| Post-Motion Discovery Initiated by Defendants' | Joseph M. Downes | Partner | 27.8 | 27.8 |
| | Lawrence S. | Partner | 4.6 | 4.6 |

| | | | | |
|---|---|---|---|---|
| Counsel | Delaney | | | |
| **Total Hours for Discovery** | | | **32.4** | **32.4** |
| Motions to Compel | Joseph M. Downes | Partner | 27.7 | 27.7 |
| | Lawrence S. Delaney | Partner | 3.1 | 3.1 |
| **Total Hours for Motions to Compel** | | | **30.8** | **30.8** |
| Presentation of Alternate Evidence at Trial | Joseph M. Downes | Partner | 34.5 | 25.95 |
| | Lawrence S. Delaney | Partner | 24.3 | 24.3 |
| **Total Hours for Evidence** | | | **58.8** | **50.25** |
| Submission Documentation Fee Request | | | | 0.00 |
| | | **TOTAL HOURS** | **291.4** | **258.1** |

### 3. Reasonable Rates

IRG has the burden to demonstrate the reasonableness of its attorneys' hourly rates. Therefore, IRG has "(1) to establish the experience and skills of his lawyers and (2) to inform the Court of the prevailing market rate in the community for attorneys with such qualifications." <u>Id.</u> Defendants' Counsel do not contest the reasonableness of the rates requested by IRG. <u>See</u> Defs.' Counsel's Resp. The Court is satisfied with the hourly rates of $295 for Downes, $325 for Delaney, $325 for Demeo, and $225 for McKim.

### 4. Fee Award

This table presents the summary of all the hours to be compensated and the fee award after reductions.

Table 4: Fee Award

| Category | Name | Position | Hours Requested | Hours Granted | Hourly Rate | Fee Amount |
|---|---|---|---|---|---|---|
| Initial Triage of Laptops and | Joseph M. Downes | Partner | 3.1 | 3.1 | $295 | $914.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Images | Lawrence S. Delaney | Partner | 19.8 | 19.8 | $325 | $6,435.00 |
| | Joseph L. Demeo | Managing Partner | 3.5 | 3.5 | $325 | $1,137.50 |
| | Ellee McKim | Associate | 5.9 | 5.9 | $225 | $1,327.50 |
| **Total Fees for Triage** | | | | | | **$9,814.50** |
| Attorneys' Fees Relating to Elysium's Expert Testimony | Joseph M. Downes | Partner | 6.8 | 6.8 | $295 | $2,006.00 |
| | Lawrence S. Delaney | Partner | 15.5 | 15.5 | $325 | $5,037.50 |
| **Total Fees for Expert Testimony** | | | | | | **$7,043.50** |
| Motion for Sanctions Against Defendants' Counsel | Joseph M. Downes | Partner | 45.3 | 45.3 | $295 | $13,363.50 |
| | Lawrence S. Delaney | Partner | 2.9 | 2.9 | $325 | $942.50 |
| **Total Fees for Motion Sanctions** | | | | | | **$14,306.00** |
| Subsequent Motion Practice and Briefs | Joseph M. Downes | Partner | 47.1 | 30.95 | $295 | $9,130.25 |
| | Lawrence S. Delaney | Partner | 19.5 | 10.9 | $325 | $3,542.50 |
| **Total Fees for Subsequent Practice** | | | | | | **$12,672.75** |
| Post-Motion Discovery Initiated by Defendants' Counsel | Joseph M. Downes | Partner | 27.8 | 27.8 | $295 | $8,201.00 |
| | Lawrence S. Delaney | Partner | 4.6 | 4.6 | $325 | $1,495.00 |
| **Total Fees for Discovery** | | | | | | **$9,696.00** |
| Motions to Compel | Joseph M. Downes | Partner | 27.7 | 27.7 | $295 | $8,171.50 |
| | Lawrence S. Delaney | Partner | 3.1 | 3.1 | $325 | $1,007.50 |
| **Total Fees for Motions to Compel** | | | | | | **$9,179.00** |
| Presentation of Alternate Evidence at Trial | Joseph M. Downes | Partner | 34.5 | 25.95 | $295 | $7,655.25 |
| | Lawrence S. Delaney | Partner | 24.3 | 24.3 | $325 | $7,897.50 |
| **Total Fees for Evidence** | | | | | | **$15,552.75** |
| Submission Documentation Fee Request | | | | | | $0.00 |
| **Sub-total Attorneys' Fees** | | | | | | **$78,264.50** |
| Global Reduction of 20% for Block Billing | | | | | | -$15,652.90 |
| **TOTAL ATTORNEYS' FEES** | | | | | | **$62,611.60** |

C.    Costs

The Defendants' Counsel do not specifically contest the costs alleged by IRG.  See id.  Table 5 presents the costs requested by IRG.  See IRG's Submission 5-6.

Table 5: Costs Requested

| Category | Amount Requested |
|---|---|
| Elysium (Expert) | $5,388.49 |
| In-House Copies | $205.35 |
| Deposition Transcript | $912.50 |
| **Total Requested Costs** | **$6,506.34** |

The costs of making in-house copies are not reimbursable, as they constitute the "overhead associated with running a law firm."  Conservation Law Found., 767 F. Supp. 2d at 259; see also Norkunas, 969 F. Supp. 2d at 199.  Regarding Ladenheim's deposition transcript's costs, this Court rules that IRG adequately demonstrated that these costs are traceable to Defendants' Counsel's failure to comply with discovery orders. Finally, IRG requests reimbursement of Elysium's fees. Elysium's invoices are sufficiently detailed and allow the Court to assess the reasonableness of this cost.  See IRG's Submission, Ex. D, Elysium Digital, LLC Invoices, ECF No. 58-4.  Due to Defendants' Counsel's failure to provide mirrored images and directly hand over the laptops without purging any data indiscriminately, IRG had to hire Elysium's experts to review the laptops and the images.  This Court therefore deems it appropriate to award the amount requested for Elysium's fees.

Table 6 presents the summary of the costs granted by this Court.

Table 6: Costs Award

| Category | Amount Requested | Amount Granted |
|---|---|---|
| Elysium (Expert) | $5,388.49 | $5,388.49 |
| In-House Copies | $205.35 | $0 |
| Deposition Transcript | $912.50 | $912.50 |
| **Total Costs** | | **$6,300.99** |

## IV. CONCLUSION

For the foregoing reasons, this Court awards IRG expenses totaling $62,611.60 for attorneys' fees and $6,300.99 for costs, making an aggregate total of $68,912.59.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE